WILSON *v.* STATE OF INDIANA.

[No. 769S146. Filed March 5, 1970. No petition for rehearing filed.]

*Frederick J. Graf,* of Indianapolis, for appellant.

*Theodore L. Sendak,* Attorney General, *Aaron T. Jahr,* Deputy Attorney General, *Robert F. Hassett,* Deputy Attorney General, for appellee.

ARTERBURN, J.—Appellant was charged in an indictment with kidnap and rape. Trial by jury resulted in a conviction on each count. Various alleged errors are urged upon us. They will be dealt with as they are presented.

Appellant first contends there is insufficient evidence to support the jury's finding of guilty. Appellant does not point out wherein he believes the evidence is insufficient, but contents himself with this very broad and general assertion. We believe the argument has no basis in fact. The statutes pertinent to the charges herein involved read as follows:

Burns' Ind. Stat. Ann. § 10-2901. "Kidnapping—Whoever kidnaps, or forcibly or fraudulently carries off or decoys from any place within this state, or arrests or imprisons any person, with the intention of having such person carried away from any place within this state, unless it be in pursuance of the laws of this state or of the United States, is guilty of kidnapping, and, on conviction, shall be imprisoned in the state prison during life."

Burns' Ind. Stat. Ann. § 10-4201. "Rape—Penalty.—Whoever has carnal knowledge of a woman forcibly against her will, or of a female child under the age of sixteen (16) years . . . is guilty of rape, and on conviction shall be imprisoned not less than two (2) years nor more than twenty-one (21) years . . ."

The record reveals that as the prosecutrix was getting out of her automobile, to enter her apartment, the appellant forced her at knife-point back into the car. He then proceeded to drive the car to the Southport Bridge in Marion County. He had the knife at her side all the while. Upon descending to the banks of the White River appellant told the victim not to scream and he would not hurt her. She refused to disrobe. Appellant then pulled her dress down around her shoulders and pulled up her skirt. He forced her to lie down at knife-point. Appellant then had intercourse with the prosecutrix and tried to strangle her for failure to cooperate. Upon completion of the attack appellant said he was going to detain the prosecutrix for several weeks. Appellant was finally convinced to return the prosecutrix to her apartment.

We find it difficult to imagine wherein appellant believes the evidence fails to support the charges and findings. To the contrary, the record is replete with substantial evidence of

probative value to support the findings of the jury. *Bush* v. *State* (1968), 251 Ind. 84, 237 N. E. 2d 584.

Appellant next argues that the trial court erred in refusing to strike certain evidence and testimony relating to identification of appellant as the perpetrator of the crimes. We first note that appellant failed to make any motion to suppress or timely objection to the evidence and therefore the issue is not saved on appeal. The evidence discloses that on November 26, 1967, the prosecutrix was kidnapped and raped. The following day she gave the police a detailed description of her assailant, including his size, clothing, voice and physical features. She was shown many pictures of sex offenders. She did not identify any of them as her assailant. Because of the description she gave of her assailant she was taken to the Johnson County Jail on December 2, 1967, to see whether she could make an identification of a prisoner. As she entered the jailhouse she saw a drivers license on a table. The license had a picture of the appellant on it. The prosecutrix immediately said, "That's him." The prosecutrix previously had said her assailant told her he had just arrived from Colorado. The license was a Colorado license. When the prosecutrix saw appellant she identified him as her assailant. At the time he turned away from her in an attempt to hide his face.

There was no question in the prosecutrix's mind to the identity of her assailant. She stated she was with the appellant for about one (1) hour. He talked to her freely and made no attempt to conceal his identity. He attempted to persuade her to have another rendevous with him, but to no avail. She had ample opportunity to take notice of his clothing and physical characteristics. This is not a case of a witness merely getting a fleeting glimpse of a fleeing suspect. The prosecutrix testified as follows:

"Q. Now your testimony this afternoon, is this from your recollection of this event in identifying the defendant, I mean the rape and kidnapping?

A. Yes, sir.

Q. What is the fact as to how you have been able to sleep since this occurred?

(objection overruled)

Q. Do you remember the question?

A. Yes, sir. I don't sleep very well. As far as forgetting what he looked like, I don't think I could.

Q. Do you dream about it?

A. Constantly. I have nightmares.

Q. In these dreams what do you see?

(objection overruled)

A. I have dreams about this defendant coming at me with a knife and I don't think I would ever forget this face, not when it is connected with something as unpleasant as this."

\* \* \* \* \*

"Q. Were you able to see his teeth on the night this occurred and how were they?

A. They were crooked.

Q. Is there any question in your mind at all about this defendant being the one?

A. No, sir, no question at all.

Q. You fully realize what faces him on his conviction, do you not?

A. Yes, sir, I do."

We further note that there was testimony by another woman that appellant had once abducted her in her own automobile at gun-point for the purpose, as he put it, of raping her, but, being thwarted in his attempts to find a suitable location to assault her, he fled from the automobile. She also made a positive in-court identification of the appellant.

On the basis of the record before us we therefore find that the in-court identification of the appellant by the prosecutrix as her assailant had a sufficient independent origin from the alleged prejudicial pre-trial confrontation. *United States* v. *Wade* (1967), 388 U. S. 218, 87 S. Ct. 1926, 18 L. Ed. 2d 1149. Under the circumstances here any

error in admitting testimony concerning the pre-trial identification would be harmless. *Chapman* v. *California* (1967) 386 U. S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705.

Appellant also urges the trial court erred in giving final instruction no. 27 to the jury. That instruction reads as follows:

"*INSTRUCTION NUMBER 27*"

"The Court further instructs you that the condition of mind which usually and immediately follows the excessive use of alcoholic liquors is not, in and of itself, the unsoundness of mind meant by our law. Mere voluntary drunkenness or intoxication does not excuse crime and a defendant cannot escape punishment for a crime on the ground that he did an alleged unlawful act while drunk: and such drunkenness and/or intoxication does not lessen or abate the severity of punishment prescribed by law.

"In other words, mere voluntary drunkenness or intoxication is no excuse for crime, nor does it in any degree mitigate or palliate an offense actually committed. On the contrary, where it is shown beyond a reasonable doubt that one who is capable of conceiving an intelligent design has conceived the design to commit a crime, and while harboring the unlawful purpose, voluntarily consume alcoholic liquors in order to blunt his moral sensibility and nerve himself up to the execution of this pre-conceived design, the offense is thereby aggrevated."

Appellant's objection to this instruction is at best difficult to discern. An indication as to the nature of the objection appears in appellant's reply brief wherein it is stated: ■ "By striking a portion of the instruction, the court created confusion in the minds of the jurors (assuming they were listening) and suggested the existence of material facts which were contested and were not admittedly in existence." We can see no error or confusion inherent in the instruction. The instruction correctly states the law.

We next move to appellant's contention of jury misconduct. It is argued that the panel of jurors was guilty of misconduct tending to prevent a fair and due consideration of the ■ cause. Appellant does not elaborate upon what the alleged misconduct consisted of. What appellant does

urge is that the jury deliberated for only twelve minutes before returning its finding of guilty and that therefore the trial court erred in refusing appellant permission to examine each juror for the purpose of ascertaining whether they were guilty of misconduct. In fact the appellant was asking to be permitted to impeach the jury's verdict by interrogating the jurors. Appellant cites no authority because there is no authority which permits such an unheard of procedure under the facts presented. The authority is exactly to the contrary. A jury's verdict may not be impeached by testimony of the jurors. Even the slightest consideration of such a practice under these circumstances would create an intolerable situation and no jury verdict would ever be lasting or conclusive. *Mitchell* v. *Parks* (1866), 26 Ind. 354; *Spannuth* v. *Cleveland R. Co.* (1925), 196 Ind. 379, 148 N. E. 410; 53 Am. Jur., *Trial* § 1105, p. 769.

Appellant next urges error by the trial court in permitting a witness, Dr. Thompson, to testify who had violated the court's order for separation of witnesses. In the cause here under consideration, the physician who examined the prosecutrix following the assault arrived in court approximately twenty (20) minutes before he was called to testify. When appellant objected to his testifying, the prosecutor stated that he had never seen the witness before and he had left word with the doctor's secretary that the court was in session and had asked her to advise the doctor not to enter the courtroom. The record suggests no connivance between the prosecutor and the witness. In *Butler* v. *State* (1950), 229 Ind. 241, 97 N. E. 2d 492, we noted that separation of witnesses at a trial is wholly within the discretion of the court. We stated:

> "When an order for separation is made, it is not improper to permit the prosecuting witness to be present during the examination of other witnesses. If the order is violated, it is still within the discretion of the court to permit the witness to testify."

The general rule is stated at 23 C. J. S. *Criminal Law* § 1013 to be:

"The fact that, after witnesses have been placed under the rule (separation of witnesses) . . . a witness remains in the courtroom or otherwise violates the rule or order does not of itself render such witness or his testimony, incompetent . . . According to some cases, the violation of the rule or order is not of itself ground for rejecting such testimony and does not affect its admissibility . . . (It) is usually held or recognized that whether or not a witness who has violated the rule or order may testify is, as a general rule within the sound discretion of the trial court . . ."

The physician's testimony concerned his examination of the prosecutrix. The preceding witnesses contributed no testimony relating to the examination. We find no error in the court's discretionary action.

Appellant suggests that this court adopt a principle whereby any restraint and transportation of the victim would be considered only as an integral part of the charge of rape and not as a separate charge of kidnapping. In other words, that because the rape in this case also included a kidnapping or transportation under restraint he should not be prosecuted separately for that crime. Carrying the argument further it seems the victim was not carried very far to constitute a real kidnapping and it was merely incidental to the rape. Of course, the argument fails because a transportation or kidnapping is not necessarily involved in a rape. It might likewise be urged in any crime of violence that the victim was touched only "lightly" and only incidental to the main crime, and therefore should not be subject to a separate or included charge of assault and battery with intent. In such cases as this the attacker is guilty of a compound crime as happens in instances when a victim is also killed in the commission of another crime, or also kidnaps, while committing a robbery. We do not approve any principle which exempts one from prosecution from all the crimes he commits because he sees fit to compound or multiply them. Such a principle would encourage the compounding and viciousness of the criminal acts. This question was not saved at any point in the trial or

in the motion for a new trial. It was raised for the first time on appeal.

The judgment of the trial court is affirmed.*

Hunter, C.J., and Givan, J., concur; Jackson, J., concurs in result; DeBruler J., not participating.

NOTE.—Reported in 255 N. E. 2d 817.

* The record shows that appellant was charged in November, 1967, but was not tried or convicted until February, 1969. This belated appeal was fully briefed and submitted to this court on January 12, 1970.