## TONY HARDIMAN *v.* STATE OF INDIANA

[No. 1-577A98. Filed June 6, 1978. Rehearing denied August 15, 1978.
Transfer denied March 13, 1979.]

*Jerry D. Stilwell, Fair & Stilwell,* of Princeton, for appellant.

*Theodore L. Sendak,* Attorney General of Indiana, *Elmer Lloyd Whitmer,* Deputy Attorney General, for appellee.

## STATEMENT OF THE CASE

LOWDERMILK, J.—Defendant-appellant Tony Hardiman appeals from his conviction for voluntary manslaughter.

Hardiman stipulated to the fact that he shot and killed Larry Smith, but Hardiman asserts that such killing was in self-defense. The circumstances surrounding the killing are as follows: On October 19, 1976 Smith and his friend, Allen Joe Martin, were at the Heritage Tavern

in Princeton, Indiana. Hardiman was also there. At approximately 8:00 p.m. the police were called to the tavern to break up a fight between Martin and Hardiman in which Hardiman was struck in the head with a beer bottle and Martin was struck in the shoulder with a tire tool. A knife was confiscated from Smith.

After the police left the tavern Hardiman ran home, got a 12 guage shotgun, and rode with a friend back to the street corner near the tavern. Hardiman got out of the car, leaned the loaded shotgun against a parked car, and started walking toward the tavern unarmed. Hardiman testified that he returned to the tavern so that he could retrieve his coat which he thought contained the keys to his car which was parked near the tavern. Shortly before Hardiman reached the tavern at approximately 8:45 p.m. Martin and Smith, who had both been drinking heavily, came out the door and started walking toward Hardiman. Hardiman testified that Smith was holding a knife in his hand, but Martin denied that Smith was carrying a knife. Hardiman retreated as Martin and Smith kept walking toward him. Hardiman retreated to the car against which the shotgun was propped and picked up the gun. When Martin and Smith failed to heed Hardiman's warning "to leave him alone," Hardiman fired the shotgun at Smith, mortally wounding him in the lower abdomen.

After shooting Smith, Hardiman ran away. He voluntarily surrendered to the police approximately four hours later.

The issues which have been presented to this court for review are as follows:

1.  Did the trial court err in admitting State's Exhibits No. 4 and No. 5 over Hardiman's objection?

2.  Did the trial court err in admitting certain testimony which Hardiman contends was inadmissible hearsay?

3.  Did the court err by restricting Hardiman's cross-examination of certain of the State's witnesses?

4.  Did the court err in refusing Hardiman's motion for directed verdict, at the conclusion of the State's evidence?

5. Did the court err in refusing Hardiman's motion for directed verdict at the conclusion of all the evidence?

6. Is the verdict of the jury supported by sufficient evidence?

7. Was there juror misconduct giving rise to reversible error since certain members of the jury talked with other persons on a subject connected with the trial and did not report that fact to the court until after their verdict was returned?

8. Did the prosecutor engage in misconduct throughout the trial to the extent there was fundamental error?

9. Did the prosecutor engage in misconduct in argument, and did such alleged misconduct, without admonishment by the court, deny Hardiman a fair trial?

10. Did the court err in giving State's tendered Instructions No. 2 and No. 3?

Hardiman contends that the trial court erred in admitting over his objection a photograph of Smith's body, which has been taken at the hospital, and the shotgun which Hardiman used to kill Smith. Hardiman contends that such exhibits were unduly prejudicial in the eyes of the jury and were irrelevant and immaterial in that the parties stipulated to the following facts:

"1. That Larry Smith was killed on October 19, 1976, by a 12 gauge shotgun fired by the defendant, Tony Hardiman, in Gibson County, Indiana.

2. That at the time of his death the amount of alcohol in the blood of Larry Smith as shown by a chemical analysis of his blood was .29% by weight of alcohol in his blood.

The parties agree that the main issue to be tried is the question of self defense."

It is Hardiman's contention that since he stipulated to the fact that he killed Smith by shooting him with a 12 guage shotgun, the admission of the shotgun and the photograph of Smith's bloody corpse served ed no purpose but to inflame the passions of the jury. Hardiman contends that such exhibits were irrelevant to the issue of self-defense.

We do not agree because in order for the jury to determine whether or not Hardiman killed Smith in self-defense it was necessary for the jury to be informed of all the details of the occurrence.

In *Meredith v. State* (1966), 247 Ind. 233, 214 N.E.2d 385, 388, our Supreme Court stated:

". . . The mere fact that evidence is injurious (i.e. prejudicial) to a defendant does not for such reason make it incompetent or inadmissible, if relevant. As a matter of fact, all evidence which is relevant and presented by the State or a party in a law suit is prejudicial. It is introduced for the very purpose of influencing the jury. It is only when evidence is irrelevant, regardless of its damaging (i.e. prejudicial) nature, that it becomes inadmissible.

The fact that the details of a murder may be gory, revolting or inflammatory when presented to a jury is no grounds for excluding such evidence, as revealed by the cases cited above. No crime is a 'tea party'. Life is real, and the jury is entitled to all the details of the acts of a defendant relating to the crime. No defendant in a criminal case is entitled to have the revolting, inflammatory and gory details relating to the crime excluded, if evidence shows he participated in the activities and brought about such a condition. To hold otherwise would be to throw a cloak of protection about those guilty of horrible, revolting and gory acts which they themselves create."

The photograph in the case at bar was relevant to show the nature, extent, and position on the body, of the wound which caused Smith's death. Such evidence could have been used by the jury to determine whether Smith was facing Hardiman or running away, whether Smith was standing or crouching, or whether Hardiman could reasonably have been aiming at Smith's leg, as he asserts that he was. Whether such evidence was or could have been presented in some other way is not important here. The important thing is that the photograph was relevant to the issue of self-defense.

The gun was, likewise, relevant. Physical exhibits are introduced to help the jury members to visualize the event and to recreate the occurrence in their own minds, so that they can arrive at a fair verdict which is based upon evidence which is as complete and as accurate as possible. By seeing the actual weapon with which the crime under

scrutiny was perpetrated the jury is better able to mentally recreate the occurrence and has a greater understanding of what actually took place. Such evidence was cumulative, but more importantly it was relevant. The court did not err in admitting the photograph and the gun into evidence.

Hardiman contends that the court erred in admitting certain testimony because such testimony constituted "hearsay by conduct." It is Hardiman's contention that by permitting Officer Darryl G. Sollman, a Princeton police officer, to testify that Lester Lyles, a friend and companion of Hardiman, appeared to be angry with Martin prior to the shooting and by permitting William Ping, an unemployed minister who was selling used cars, to testify that in addition to Hardiman he saw another person across the street who was pointing a gun at Martin and Smith, the jury was given the impression that a conspiracy existed on the part of Hardiman and some of his friends to hurt Martin and Smith. Hardiman argues that any evidence which related to an alleged conspiracy was irrelevant to the issue of self-defense which was being tried. We do not agree.

Even though no issue of conspiracy was being tried, evidence of concerted action on the part of Hardiman and his friends would tend to negate Hardiman's assertion that he was acting in self-defense. The testimony is, therefore, relevant.

Hardiman has waived his "hearsay by conduct" argument because of his failure to cite to this court any authority which supports or explains the rather unique twist he has placed upon the hearsay rule. See Ind. Rules of Procedure, Appellate Rule 8.3(A)(7).

Hardiman contends that the trial court erred in restricting his cross-examination of certain of the State's witnesses. The State objected to Hardiman's cross-examination questions on the ground that such questions were outside the scope the direct examination. Hardiman contends that the questions which he was not permitted to ask were related to the subject matter covered on direct examination and were admissible under the rule set forth in *Howard v. State* (1976), 265 Ind. 503, 355 N.E.2d 833, 836, which reads as follows:

"... In short, the scope of cross-examination extends to all phases

of the subject matter covered in direct, and not only to those parts specifically included in the direct examiner's questions."

We point out that the conduct of cross-examination is within the discretion of the trial court. See *Bobbitt v. State* (1977), 266 Ind. 164, 361 N.E.2d 1193. In order to reverse we must find that the court abused its discretion. After examinating the record in the case at bar, we have found no such abuse.

Issues 4, 5, and 6 can be treated together in one discussion on the sufficiency of the evidence. Hardiman contends that the State's evidence was, as a matter of law, insufficient to convict him of voluntary manslaughter. Voluntary manslaughter is an intentional and unlawful killing without malice. See *Holloway v. State* (1976), 170 Ind.App. 155, 352 N.E.2d 523. Hardiman cites *Streeval v. State* (1968), 251 Ind. 349, 241 N.E.2d 255, as authority for the proposition that, since the State introduced Hardiman's statement, which contained his assertion that he acted in self-defense, the State was bound by all facets of such statement, including Hardiman's assertion of self-defense.

Hardiman grossly misinterprets the meaning of *Streeval, supra. Streeval* held that where the evidence was without conflict the State was bound by the statements of its witnesses. In the case at bar the evidence on whether Hardiman acted in self-defense was in conflict. Therefore, it was the duty of the jury to resolve such conflict. Since the jury, as the trier of fact, resolved the conflicting evidence on the issue of self-defense in favor of the State and against Hardiman, which evidence amply supports a finding of voluntary manslaughter, we must hold that the court did not err in overruling Hardiman's motion for directed verdict at the close of all the evidence and that the evidence was sufficient to support the conviction.

Hardiman alleges misconduct on the part of certain jury members. To prove the alleged misconduct Hardiman submitted affidavits from the bailiff, from one of the jurors, and from his attorney at trial. The law in Indiana is clear that neither a juror's affidavit, nor an attorney's affidavit based solely on hearsay can be used to attack the verdict. See *Wilson v. State* (1970), 253 Ind. 585, 255 N.E.2d 817, and *Davis v. State* (1967), 249 Ind. 426, 231 N.E.2d 230. Since neither the affidavit of the juror nor that of the attorney was capable of being

considered, and since the bailiff's affidavit contained no allegation of misconduct, we must hold that, as a matter of law, Hardiman failed to prove any misconduct on the part of the jury.

Since the alleged misconduct was not brought to the court's attention until after the verdict had been rendered, the precautionary procedures, as set forth in *Sacks v. State* (1977), 172 Ind.App. 185, 360 N.E.2d 21, to determine whether a mistrial should be granted, were not applicable. The alleged misconduct of the jurors was considered by the court in the motion to correct errors, and, as was pointed out above, the proof as to such misconduct was insufficient as a matter of law.

Hardiman alleges that during the presentation of evidence and during final argument the prosecutor engaged in misconduct which constituted fundamental error. We do not agree.

In *Hackett v. State* (1977), 266 Ind. 103, 360 N.E.2d 1000, 1003, our Supreme Court said:

"All attorneys should act in a manner reflecting the integrity and dignity of the legal profession at all times, as officers of the court should. They should be temperate and dignified in their conduct. But for a prosecutor's conduct to be grounds for reversal, it must be so inflammatory or so prejudicial in its persuasive effect as to have placed the defendant in grave peril. *Maldonado v. State* (1976), [265] Ind. [492], 355 N.E.2d 843. . . ."

We have carefully examined the record and, while many of the prosecutor's questions and statements should not be considered models to be followed in future trials, we have determined that the prosecutor's conduct was not so inflammatory or prejudicial that Hardiman was placed in grave peril thereby.

Hardiman contends that the trial court erred in giving to the jury State's tendered Instructions No. 2 and No. 3 in that such instructions attempted to exclude the concept of self-defense from the jury's consideration in determining whether or not malice was present. Hardiman cites *Mundy v. State* (1966), 247 Ind. 224, 214 N.E.2d 389, to support his contention.

*Mundy, supra,* is distinguishable from the case at bar. In *Mundy, supra,* the instruction which necessitated reversal of the conviction at-

tempted to distinguish between murder and manslaughter. The instructions objected to in the case at bar merely define malice and show how the presence or absence of malice can be determined. The instruction in *Mundy, supra,* seemed to say that *any* willful killing without malice is unlawful and, therefore, constituted manslaughter. The instructions in the case at bar cannot be so interpreted. The instructions in the case at bar were correct statements of the law, and the court did not err in giving them to the jury. See *Taylor v. State* (1973), 260 Ind. 264, 295 N.E.2d 600, 610, and *Rennert v. State* (1975), 263 Ind. 274, 329 N.E.2d 595, 600.

Judgment affirmed.

Lybrook, P.J. and Robertson, J. concur.

NOTE—Reported at 377 N.E.2d 1384.