**Verdell Denise FOX,
Defendant-Appellant,**

v.

**STATE of Indiana, Plaintiff-Appellee.**

No. 3–282A26.

Court of Appeals of Indiana,
Third District.

Sept. 30, 1982.

Rick L. Jancha, South Bend, for defendant-appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for plaintiff-appellee.

GARRARD, Judge.

Verdell Fox was charged with robbery while armed with a handgun. She was

tried by jury and was convicted of the lesser offense of robbery, a Class C felony.

At trial the victims, two young men, testified essentially that they became lost in South Bend trying to return to Michigan from Michigan City, Indiana, and that in the early morning hours of April 1, 1981, they found themselves at the corner of Michigan and Broadway Streets. According to them Ms. Fox came over to their automobile and asked them if they "wanted to have a good time." They said no and asked for directions. The defendant gave them directions then pulled a gun and ordered them from the car. They complied and the defendant then took Rebelez' wallet from which she removed a twenty dollar bill. She then ran off into an alley and the victims "jumped into the car and took off." Several minutes later the victims saw a South Bend police car, stopped it, and reported the incident. A short time later Fox was identified and arrested. The weapon was never located.

Fox' version of what occurred was substantially different. She testified that she was a prostitute. She stated she was standing near the corner of Michigan and Broadway when Rebelez called to her to come over to his automobile. She walked over and began talking to the boys. She asked if they wanted a date and Rebelez asked how much it would cost. She testified they agreed to $75, but she told them she would not get into the car since there were two of them. According to Fox the boys then followed her at her request to a house on Franklin Street. All three then went into the house. Fox stated that as she was leaning on the dresser the boys were huddled together talking. Rebelez then told her they did not have the money agreed upon. Fox testified she became upset and went back downstairs. She told the boys she deserved something for her trouble and Rebelez handed her a twenty dollar bill. She then let them out of the house, but several minutes later noticed they were still sitting in front of the house. The driver asked how to get back to Michigan Street and she told them. A short time later she returned to the corner of Michigan and

Haney. Shortly thereafter a police car drove up, Rebelez identified Fox and she was arrested.

Although we have condensed our recital of the evidence we might also observe that neither version of what occurred was lacking in credibility problems.

The case went to the jury at 3:30 p. m. At about 9:15 p. m. the jury reported it was deadlocked and asked how to proceed. Pursuant to agreement of the parties the court then gave to the jury an instruction similar to that approved in *Lewis v. State* (1981), Ind., 424 N.E.2d 107. At 10:58 p. m. the jury again reported that they were unable to agree. The court advised them that it could give them no further instructions on the law to assist them and asked that they continue their deliberations. At 12:01 a. m. the jury returned a verdict of guilty of robbery.

Fox urges four errors on appeal: (1) the verdict was not sustained by the evidence; (2) the court erred in refusing to grant a mistrial after the jury's second report that it was deadlocked; (3) appellant was denied a fair trial because of the presence of extraneous prejudicial material in the jury room while the jury was deliberating; and (4) the court erred at sentencing in considering a 1977 conviction for prostitution as a felony.

■ Applying our traditional standard for appellate review of the evidence requires us to conclude the evidence was sufficient to sustain the conviction. The evidence favorable to the verdict established all the elements of robbery with Fox as the perpetrator. Contrary to Fox' appellate assertion the record does not require us to conclude that Fox committed armed robbery or nothing at all. Applying the standard of proof beyond a reasonable doubt, the jury could have concluded that Fox committed a robbery, but that the state failed to establish that she used a handgun in doing so.

■ We also reject Fox' contention that the court erred in refusing to declare a mistrial when the jury reported for the

second time that it was unable to agree. It is firmly established in Indiana that the length of time a jury should be permitted to deliberate is within the sound discretion of the trial court. *Cade v. State* (1976), 264 Ind. 569, 348 N.E.2d 394. Permitting the jury to deliberate for eight and one half hours does not constitute an abuse of discretion even in view of two reports from the jury that they were unable to agree. (In this latter regard we note that the jury reported its position to the judge on both occasions and the second report indicated a shift in position, rather than a continuance of the original "deadlock.")

■ The *Lewis* instruction was given with the express consent of the parties and no error is predicated upon it. We do not agree with Fox that after the second report the court's advising the jury it could give them no further instructions on the law to assist them and requesting them to continue their deliberations constituted an impermissible single instruction under *Lewis, supra*. Nor do we believe that this communication considered with all the other circumstances was so likely to coerce a verdict that denial of a mistrial was an abuse of discretion. *Ayad v. State* (1970), 254 Ind. 430, 261 N.E.2d 68. Fox has failed to demonstrate that the court abused its discretion in refusing to grant a mistrial.

We come now to Fox' contention that she was denied a fair trial because of the jury's exposure to extraneous prejudicial material.

At about 8:00 o'clock in the morning after the jury returned its verdict the court bailiff discovered a copy of the March 23, 1981 edition of *Newsweek* magazine in the jury room. The magazine cover is blue with the word "Newsweek" in red at the top. Below this in bright yellow print appear the words, "The Epidemic of Violent Crime." The remaining two-thirds of the cover contains an oversize photograph of a gloved hand pointing a revolver directly at the viewer. Bullets are clearly visible in the cylinder. Inside the magazine is an eight page feature consisting of text, photos, statistics on violent crime and the results of a poll indicating spreading fear of crime and lack of public confidence in the criminal justice system.

■ Contrary to the view taken by some federal circuits, *see, e.g., United States v. Renteria* (5th Cir. 1980), 625 F.2d 1279; *United States v. Vasquez* (9th Cir. 1979), 597 F.2d 192, Indiana does not take the position that the mere possibility that extrinsic evidence could have affected the verdict is sufficient to require a mistrial. Instead, following decisions of the Seventh Circuit in *Margoles v. United States* (7th Cir. 1969), 407 F.2d 727; *United States v. Largo* (7th Cir. 1965), 346 F.2d 253; and *United States v. Accardo* (7th Cir. 1962), 298 F.2d 133 our Supreme Court in *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819 held that whenever prejudicial publicity is brought to the attention of the court, "at a minimum it must, at that time, interrogate the jury to determine its exposure, and that jurors acknowledging exposure should be examined individually to determine the extent of such exposure and the likelihood of prejudice resulting therefrom." 295 N.E.2d at 823. *See also Sacks v. State* (1977), 172 Ind.App. 185, 360 N.E.2d 21.

The court in *Lindsey* then detailed the procedure to be employed by the trial court in such cases and reversed the appellant's conviction because although the prejudicial material was brought to the court's attention during the trial, it took no action to interview the jury regarding it until after the verdict had been returned. The significance of the court's holding and the procedure prescribed are underscored by the rule in other jurisdictions requiring a mistrial if the judge determines the jury was in fact exposed to the material and the judge on his own (without inquiring of the jury) determined that harm was reasonably possible because of the content of the material: We judicially recognize that it is very difficult to accurately gauge the effect of such matters upon the verdict.

■ In the present case the presence of the prejudicial material was not discovered until after the verdict was returned and the

jury was discharged. The matter was brought to the court's attention through Fox' motion to correct errors which was accompanied by an affidavit from the bailiff.

It would have been preferable for Fox' attorney to have immediately brought the matter on record by filing an immediate motion to correct errors addressing the issue. Depending upon the further course of the proceedings that motion could have then been amended or supplemented to raise other contentions of error within the sixty day time limit. Even so, Fox used the appropriate procedural vehicle available. The error has been properly preserved.

■ In its ruling upon the motion to correct errors the trial court expressed its belief that at least some of the jurors had seen the magazine. The court also determined that the magazine was unduly prejudicial. The court did not, however, recall the jury and question them in the manner outlined in *Lindsey*. Instead it concluded that because the jury had found Fox guilty of robbery rather than armed robbery the material had not likely had an effect upon the verdict.[1]

Under the circumstances here present we are unable to accept the court's conclusion that the verdict rendered clearly rebuts the inference of prejudice. Given the twice-reported disagreement of the jury it is equally conjectural that the magazine could have influenced jurors who were not persuaded of Fox' guilt to vote for the included offense. Moreover, we read *Lindsey* to require a post verdict voir dire under these circumstances when there was no available opportunity prior to the return of the verdict. 295 N.E.2d at 824.[2]

The error does not, however, mandate a reversal in view of the *Lindsey* holding. Pursuant to *Atkinson v. State* (1979), Ind. App., 391 N.E.2d 1170 the court should be permitted to recall the jury to determine whether, in fact, any of them were exposed to the magazine and proceed accordingly.[3] In the alternative, if the court determines it is impractical or impossible to do so, it should set aside the conviction and grant Fox a new trial.

Finally, Fox argues that the court erred at sentencing in considering a 1977 conviction for prostitution. In part she argues that the conviction should not be deemed a felony. It was, and her brief so concedes.

She also urges that there was an insufficient showing that she committed the offense. In support she cites a footnote in *Davis v. State* (1980), Ind.App., 398 N.E.2d 704 and her representation through counsel at the sentencing hearing that she could not remember what offenses she had committed prior to December 1978.

■ The sentencing hearing, occurring after guilt has been determined, does not impose upon the state the heavy burden it must discharge to establish the guilt of an accused. In *Gardner v. State* (1979), Ind., 388 N.E.2d 513, 517–18 our Supreme Court observed that the presentence investigation report is a theoretically neutral document and that the matters set forth in the report will be accepted as true unless challenged by the defendant. The court then held that the initial burden of production rests with the defendant in disputing the information contained in the report.

■ Here the court presented counsel with a copy of the docket sheet from the prostitution conviction. After conferring with Fox, counsel responded that Fox "does

---

1. In ruling on the motion to correct errors the court stated that had the verdict been for armed robbery the judge would have felt obliged to set it aside.

2. This assumes, as is the case with Fox, that the court has first determined that the risk of prejudice is substantial based upon the content

of the material and the likelihood that one or more jurors have been exposed to it.

3. If the jury was in fact exposed, the court's prior determination of the potential prejudicial impact of the magazine would appear to require a new trial since there could be no effective pre-verdict admonition.

not recall that particular incident. She is not contesting the accuracy or validity of the docket sheet, [she] just admits no recollection."

Under these circumstances we believe that pursuant to *Gardner* the court properly considered the conviction.

Remanded for further proceedings consistent with the views expressed herein.

HOFFMAN, P. J., concurs.

STATON, J., dissents and files separate opinion.

STATON, Judge, dissenting.

I dissent from the results reached by the Majority Opinion. After an excellent recitation of the authorities on the fair trial issue, the Majority remanded *Fox v. State* "... for further proceedings consistent with the views expressed herein." My dissent goes to the mis-interpretation of *Lindsey v. State* (1973), 260 Ind. 351, 295 N.E.2d 819. *Lindsey* requires that Fox be granted a new trial instead of merely remanding the case back to the trial court for further proceedings. The verdict of the jury was delivered approximately fifteen months ago. Any polling of the jury at this late date would be meaningless due to the passage of time and the dulling of memories due to intervening events. Furthermore, *Lindsey,* a 1973 Supreme Court opinion written by Justice Prentice, clearly sets forth the guidelines and procedure to be followed by the trial court when an invasion of the judicial process threatens a fair trial. I would grant Fox a new trial.

The media invasion in *Lindsey* occurred during the trial instead of during the deliberations of the jury. In the Majority Opinion, it states: "At about 8:00 o'clock in the morning after the jury returned its verdict the court bailiff discovered a copy of the March 23, 1981 edition of *Newsweek* magazine in the jury room... The matter was brought to the court's attention through Fox' motion to correct errors which was accompanied by an affidavit from the bailiff." When this occurred, the trial court was mandated by *Lindsey* to take proper remedial action to assure a fair trial to Fox. In *Lindsey,* Justice Prentice wrote:

"... although there has been no showing that the news item prejudiced the jury, we nevertheless, hold that the failure of the trial judge to take remedial action at the proper time was violation of the defendant's constitutional right to a fair trial." 295 N.E.2d at 822.

*Lindsey* guidelines require that the trial court interrogate the members of the jury *at the time the invasion is brought to its attention*—not a year and a half later. *Lindsey* further provides that:

"at a minimum it must, *at that time,* interrogate the jury to determine its exposure, and that jurors acknowledging exposure should be examined individually to determine the extent of such exposure and the likelihood of prejudice resulting therefrom. The merits of examining separately is two-fold. First, it protects those not already exposed and eliminates the compounding of exposure; and second, it places an exposed juror in the best position possible to disclose the nature and extent of his exposure, possibly his own impropriety, with a minimum of embarrassment, self-consciousness or fear and therefore the maximum possibility of arriving at the truth. At best, jurors are naturally reluctant to admit their own malfeasance, no matter how innocently committed.

"The defendant, in this case, was not afforded such minimum protection...." (My emphasis.). 295 N.E.2d at 823.

*Lindsey* concluded that a defendant is "... entitled, as a matter of right, to have the jury polled to determine which jurors, if any, had been exposed..." to the highly prejudicial publication. After receiving notice of the highly prejudicial publication in the juryroom, the trial court made no effort to interrogate the members of the jury or to afford the minimum protection to Fox.

Not even the appearance of a fair trial was attempted by the trial court.

In *Lindsey,* the trial court attempted to ascertain from the jury whether they had read a certain newspaper story after the verdict was delivered. The trial court had notice of the jury's exposure to the newspaper article during the trial and before the verdict. The Indiana Supreme Court in *Lindsey* held the trial court did not "... take remedial action at the proper time" and did not afford the defendant the "minimum protection" to assure a fair trial. In Fox's trial, the trial court did absolutely nothing after receiving Fox's Motion to Correct Errors. The only action that can be taken by this Court to assure Fox a fair trial at this late date is to grant Fox a new trial.