**Verdell Denise FOX, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 184S15.

Supreme Court of Indiana.

Jan. 12, 1984.

Rick L. Jancha, South Bend, for appellant.

Linley E. Pearson, Atty. Gen., Palmer K. Ward, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

This cause is before us upon the petition of the Defendant (Appellant) to transfer the cause from the Court of Appeals, Third District, that court having determined that the trial court erred in failing to reassemble the jury, following its discharge and to conduct a *Lindsey* hearing (*Lindsey v. State*, (1973) 260 Ind. 351, 295 N.E.2d 819) in response to a motion to correct errors and a supporting affidavit which, if accepted as true, disclosed only a possibility that the jury had been improperly exposed to deleterious materials during its deliberations. It was, and continues to be, the position of the defendant that the Court of Appeals should have ordered a new trial.

The opinion of the Court of Appeals erroneously decides a new question of law, i.e. that *Lindsey* is applicable to post-verdict disclosures and inferentially contravenes ruling precedents of this Court holding jurors may not impeach their verdicts. Accordingly, the decision and opinion of the Court of Appeals are now ordered vacated, and the petition to transfer is granted, but

the judgment of the trial court is, nevertheless, affirmed.

▬▬ The appeal presents four issues, including the aforementioned one upon which we disagree with the Court of Appeals' determination. In all other respects, however, we adopt that court's opinion, as authored by Judge Garrard, as hereinafter quoted:

"Verdell Fox was charged with robbery while armed with a handgun. She was tried by jury and was convicted of the lesser offense of robbery, a Class C felony.

"At trial the victims, two young men, testified essentially that they became lost in South Bend trying to return to Michigan from Michigan City, Indiana, and that in the early morning hours of April 1, 1981, they found themselves at the corner of Michigan and Broadway Streets. According to them Ms. Fox came over to their automobile and asked them if they 'wanted to have a good time.' They said no and asked for directions. The defendant gave them directions then pulled a gun and ordered them from the car. They complied and the defendant then took Rebelez' wallet from which she removed a twenty dollar bill. She then ran off into an alley and the victims 'jumped into the car and took off.' Several minutes later the victims saw a South Bend police car, stopped it, and reported the incident. A short time later Fox was identified and arrested. The weapon was never located.

"'Fox' version of what occurred was substantially different. She testified that she was a prostitute. She stated she was standing near the corner of Michigan and Broadway when Rebelez called to her to come over to his automobile. She walked over and began talking to the boys. She asked if they wanted a date and Rebelez asked how much it would cost. She testified they agreed to $75, but she told them she would not get into the car since there were two of them. According to Fox the boys then followed her at her request to a house on

Franklin Street. All three then went into the house. Fox stated that as she was leaning on the dresser the boys were huddled together talking. Rebelez then told her they did not have the money agreed upon. Fox testified she became upset and went back downstairs. She told the boys she deserved something for her trouble and Rebelez handed her a twenty dollar bill. She then let them out of the house, but several minutes later noticed they were still sitting in front of the house. The driver asked how to get back to Michigan Street and she told them. A short time later she returned to the corner of Michigan and Haney. Shortly thereafter a police car drove up, Rebelez identified Fox and she was arrested.

"Although we have condensed our recital of the evidence we might also observe that neither version of what occurred was lacking in credibility problems.

"The case went to the jury at 3:30 p.m. At about 9:15 p.m. the jury reported it was deadlocked and asked how to proceed. Pursuant to agreement of the parties the court then gave to the jury an instruction similar to that approved in *Lewis v. State* (1981), Ind., 424 N.E.2d 107. At 10:58 p.m. the jury again reported that they were unable to agree. The court advised them that it could give them no further instructions on the law to assist them and asked that they continue their deliberations. At 12:01 a.m. the jury returned a verdict of guilty of robbery.

"Fox urges four errors on appeal: (1) the verdict was not sustained by the evidence; (2) the court erred in refusing to grant a mistrial after the jury's second report that it was deadlocked; (3) appellant was denied a fair trial because of the presence of extraneous prejudicial material in the jury room while the jury was deliberating; and (4) the court erred at sentencing in considering a 1977 conviction for prostitution as a felony.

"Applying our traditional standard for appellate review of the evidence requires us to conclude the evidence was sufficient to sustain the conviction. The evidence favorable to the verdict established all the elements of robbery with Fox as the perpetrator. Contrary to Fox' appellate assertion the record does not require us to conclude that Fox committed armed robbery or nothing at all. Applying the standard of proof beyond a reasonable doubt, the jury could have concluded that Fox committed a robbery, but that the state failed to establish that she used a handgun in doing so.

"We also reject Fox' contention that the court erred in refusing to declare a mistrial when the jury reported for the second time that it was unable to agree. It is firmly established in Indiana that the length of time a jury should be permitted to deliberate is within the sound discretion of the trial court. *Cade v. State* (1976), 264 Ind. 569, 348 N.E.2d 394. Permitting the jury to deliberate for eight and one half hours does not constitute an abuse of discretion even in view of two reports from the jury that they were unable to agree. (In this latter regard we note that the jury reported its position to the judge on both occasions and the second report indicated a shift in position, rather than a continuance of the original 'deadlock.')

"The *Lewis* instruction was given with the express consent of the parties and no error is predicated upon it. We do not agree with Fox that after the second report the court's advising the jury it could give them no further instructions on the law to assist them and requesting them to continue their deliberations constituted an impermissible single instruction under *Lewis, supra.* Nor do we believe that this communication considered with all the other circumstances was so likely to coerce a verdict that denial of a mistrial was an abuse of discretion. *Ayad v. State* (1970), 254 Ind. 430, 261 N.E.2d 68. Fox has failed to demonstrate that the court abused its discretion in refusing to grant a mistrial.

"We come now to Fox' contention that she was denied a fair trial because of the jury's exposure to extraneous prejudicial material.

"At about 8:00 o'clock in the morning after the jury returned its verdict the court bailiff discovered a copy of the March 23, 1981 edition of *Newsweek* magazine in the jury room. The magazine cover is blue with the word 'Newsweek' in red at the top. Below this in bright yellow print appear the words, 'The Epidemic of Violent Crime.' The remaining two-thirds of the cover contains an oversize photograph of a gloved hand pointing a revolver directly at the viewer. Bullets are clearly visible in the cylinder. Inside the magazine is an eight page feature consisting of text, photos, statistics on violent crime and the results of a poll indicating spreading fear of crime and lack of public confidence in the criminal justice system.

\*    \*    \*    \*    \*    \*

"Finally, Fox argues that the court erred at sentencing in considering a 1977 conviction for prostitution. In part she argues that the conviction should not be deemed a felony. It was, and her brief so concedes.

"She also urges that there was an insufficient showing that she committed the offense. In support she cites a footnote in *Davis v. State* (1980), Ind.App., 398 N.E.2d 704 and her representation through counsel at the sentencing hearing that she could not remember what offenses she had committed prior to December 1978.

"The sentencing hearing, occurring after guilt has been determined, does not impose upon the state the heavy burden it must discharge to establish the guilt of an accused. In *Gardner v. State* (1979) [270] Ind. [627] 388 N.E.2d 513, 517–18 our Supreme Court observed that the presentence investigation report is a theoretically neutral document and that the matters set forth in the report will be accepted as true unless challenged by the defendant. The court then held that the

initial burden of production rests with the defendant in disputing the information contained in the report.

"Here the court presented counsel with a copy of the docket sheet from the prostitution conviction. After conferring with Fox, counsel responded that Fox 'does not recall that particular incident. She is not contesting the accuracy or validity of the docket sheet, [she] just admits no recollection.'

"Under these circumstances we believe that pursuant to *Gardner* the court properly considered the conviction." *Fox v. State*, (1982) Ind., 439 N.E.2d 1385, 1386–88, 1389–90.

■ Upon the third issue, the Court of Appeals remanded the cause with instructions to reassemble the jury for a voir dire examination with guidelines prescribed in *Lindsey v. State*, (1973) 260 Ind. 351, 295 N.E.2d 819, if practical to do so, and alternatively to grant a new trial.

*Lindsey* has been misapplied. The Lindsey problem arose during trial, while the judge was in command and under the responsibility of seeing that it was conducted as fairly as possible. The case before us presents a post verdict problem. In *Lindsey*, it was reasonable to require the judge to act upon a showing of a substantial possibility that the jury had been improperly exposed to extraneous material having a clear potential to taint its verdict. It is not reasonable, however, and would be counterproductive to require the judge, after a verdict has been returned, to run willy-nilly in search of evidence of a prejudicial impropriety upon the mere *claim* of a *possible* impropriety which, if it did in fact, occur, *possibly* harmed the claimant. The *Lindsey* procedures are not appropriate and are not available for attacking a verdict. *Hardiman v. State*, (1978) 176 Ind.App. 557, 563, 377 N.E.2d 1384, 1388.

An Inquiry of the type required by *Lindsey* would, in its second stage, permit jurors to testify as to the influence the extraneous material had had upon their deliberations and, therefore, to impeach their own verdict, which has never been permitted in

this State. *Wilson v. State*, (1970) 253 Ind. 585, 255 N.E.2d 817; *Davis v. State*, (1967) 249 Ind. 426, 231 N.E.2d 230; *see also Hardiman v. State*, (1978) 176 Ind. 557, 377 N.E.2d 1384. *Accord McDonald v. Pless*, (1915) 238 U.S. 264, 35 S.Ct. 783, 59 L.Ed. 1300; *Mattox v. United States*, (1892) 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917. Permitting a *Lindsey* inquiry after the verdict has been rendered would be contrary to our well established precedent and would "create an intolerable situation and no jury verdict would ever be lasting or conclusive." *Wilson v. State*, 253 Ind. at 591, 255 N.E.2d at 821.

Our Court has not, to our knowledge, been confronted, heretofore, with a case in which the possibility that the jury may have been exposed to prejudicial extrinsic material was discovered after the verdict had been returned and the jury discharged, although the issue has been considered by several federal circuit courts. While these courts differ upon the standard to apply in determining whether or not to set a verdict aside following such improper exposure, they appear to agree—and it is obvious—that a threshold question is whether or not there had been such exposure. (*See Vasquez v. United States*, (9th Cir.1979) 597 F.2d 192 and cases there cited for summary of standards.)

In the case at bar, the magazine was brought to the trial court's attention through Defendant's motion to correct errors, to which the bailiff's affidavit was attached, pursuant to Ind.Rules of Procedure, T.R. 59(A)(1) and T.R. 59(H). The pertinent parts of the motion and affidavits were as follows:

"4. The defendant was denied a fair trial due to irregularities and/or misconduct in the proceedings as follows:

"A. During the course of jury deliberations, the jury had in their possession (in the jury room) a Newsweek magazine which had on the front cover a 'smoking .38' with the title 'The Epidemic of Violence in America.' This magazine should not and ought not have been allowed into the jury room. This imper-

missible and improper material in the juryroom during deliberations on the charge of Armed Robbery, is clearly prejudicial (if not openly, then subliminaly) to the defendant. She was denied, therefore, her right to a fair trial."

"Wayne Belock, being first duly sworn upon his oath, deposes and says that:

"1. He is the law clerk-bailiff for the Honorable Robert L. Miller, Jr., Judge of the St. Joseph Superior Court and was so employed on July 2, 1981.

"2. On July 2, 1981, he was bailiff and in charge of the jury for the case of State of Indiana vs. Verdell Denise Fox, Cause No. 22278.

"3. At approximately 12:30 a.m. on July 2, 1981, he left the Court House after the jury had returned their verdict and had been discharged from service.

"4. On July 2, 1981, at approximately 8:30 a.m., he returned to the Court House for purposes of cleaning up the jury room.

"5. While cleaning the jury room, your affiant found on a chair a *Newsweek* magazine with a hand gun on the cover entitled 'The Epidemic of Violence in America.'

"6. Your affiant has retained this magazine in his possession since it was found on July 2, 1981.

"Further, your affiant sayeth not." Supplemental Affidavit: "Wayne Belock, being first duly sworn upon his oath, deposes and says that:

"1. He is the law clerk-bailiff for the Honorable Robert L. Miller, Jr., Judge of the St. Joseph Superior Court and was so employed on July 2, 1981.

"2. On July 2, 1981, at approximately 8:30 a.m., he entered the jury room to clean it up after the jury was dismissed in the cause entitled State of Indiana vs. Verdell Denise Fox, Cause No. 22278.

"3. On the morning of July 2, 1981, he found on a chair in the jury room a *Newsweek* magazine dated March 23, 1981, entitled 'The Epidemic of Violent Crime'; which said magazine is attached hereto, made a part hereof and denominated 'Defendant's Exhibit B.'

"4. The *Newsweek* magazine has been in his possession continuously since July 2, 1981.

"Further, your affiant sayeth not."

A hearing was had on the motion to correct errors, but no evidence was tendered.

■ Without a prima facie showing of exposure, we see no basis for the trial judge to consider the likelihood of prejudicial impact or the ultimate question of the remedial action required. Here, not only was there no such showing, the motion and affidavits did not even allege it. The most that can be said for them is that they alleged that the jury might have been exposed to the magazine cover and the companion editorial. There was no averment and no evidence that any juror had, in fact, seen or discussed the material or even that it had been in the jury room during the deliberations. The affidavits stated only that the magazine was found in the jury room on the morning following the return of the verdict. We recognize a substantial possibility that the magazine was, in fact, in the jury room during deliberations; however, to say that it was and to say further that one or more jurors examined it requires a degree of speculation that is unnecessary and, therefore, inappropriate.

■ Although a juror may not impeach his verdict, he may give testimony as to what transpired during the trial, including the deliberations. *Mattox v. United States*, (1892) 146 U.S. 140, 13 S.Ct. 50, 36 L.Ed. 917; *Llewellyn v. Stynchcombe*, (5th Cir.1980) 609 F.2d 194; *United States v. Vasquez*, (9th Cir.1979) 597 F.2d 192. If Defendant, therefore, had a bona fide claim of jury taint, it behooved her first to allege that exposure did occur, as a matter of fact, and to support the claim with evidence, by affidavit and/or testimony, in the discretion of the trial judge. If, and only if, a claimant establishes, by a preponderance of the evidence, that the jury saw or heard the material complained of, should the judge be put to the task of determining

the likelihood of the verdict having, thereby been polluted. The ruling upon the motion to correct errors was, therefore, correct upon this issue.

We also recognize that in ruling upon this issue, the trial judge's comments may imply that he assumed that the jury had at least seen the cover of the magazine, inasmuch as he stated that he was not convinced that such had influenced the verdict, because the verdict was one of guilty as to an unarmed offense rather than as to the armed offense charged. However, his remarks need not necessarily be so interpreted. In any event, his ruling was correct, even though it may have been for the wrong reason.

We find no error. The judgment of the trial court is affirmed.

GIVAN, C.J., and DeBRULER and PIVARNIK, JJ., concur.

HUNTER, J., dissenting with opinion.

HUNTER, Justice, dissenting.

I must respectfully dissent from the majority opinion. I do agree that it is not appropriate to hold a *Lindsey* inquiry after a verdict has been given. However, I do not agree with the standard set out by the majority that the defendant must establish by a preponderance of the evidence that the jury actually saw or heard the extraneous material before this Court can assume the verdict might have been tainted. The constitutional guarantee to a fair trial demands a reversal in any case where the accused has proved that there is a substantial likelihood the jury was improperly exposed to prejudicial, extrinsic material during their deliberations. The Seventh Circuit has expressed this standard in the following manner. "And it is sufficient to require a reversal if, in our judgment, the error *might* have operated to the substantial injury of the defendant." *United States v. Grady*, (7th Cir.1950) 185 F.2d 273, 275. (emphasis added).

In this case, there is more than a substantial liklihood that the magazine was in the jury room during at least part of the jury deliberations since the bailiff's affidavit established that he found it in the jury room at approximately 8:30 a.m., when the jury had only been discharged eight hours earlier at 12:30 a.m. that same morning. It was unequivocally established that the magazine was highly prejudicial, extrinsic material. While it is true that the magazine might not have been seen by any member of the jury, it could have been used effectively to persuade jurors otherwise opposed to conviction to agree to a guilty verdict. This is especially true in a case such as this where the evidence was conflicting, the credibility of the prosecuting witnesses was not good, and the jury reported being deadlocked two times. In circumstances such as these, where the extrinsic evidence is patently prejudicial a new trial is required. *Expressio eorum quae tacite insunt nihil operatur.*

The judgment of the trial court should be reversed and defendant should be granted a new trial.