## Elias KARLOS, Appellant (Defendant Below),

### v.

## STATE of Indiana, Appellee (Plaintiff Below).

### No. 883S296.

Supreme Court of Indiana.

April 17, 1985.

James V. Tsoutsouris, Public Defender, Porter County, James A. Johnson, Deputy Public Defender, Valparaiso, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen Ransom Radford, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Following a trial by jury, Defendant (Appellant) was convicted of Burglary, a class B felony, Ind.Code § 35–43–2–1 (Burns 1979), Theft, a class D felony, Ind.Code § 35–43–4–2 (Burns Supp.1984), and was found to be an habitual offender, Ind.Code § 35–50–2–8 (Burns Supp.1984). He was sentenced to twenty (20) years imprisonment upon the burglary conviction, the court having enhanced the ten year sentence for burglary by ten (10) additional years upon the habitual offender finding, and to a consecutive term of imprisonment of two (2) years upon the theft conviction. His direct appeal presents six (6) issues for our review, as follows:

(1) Whether the trial court erred in permitting a witness to refresh his recollection by reading a transcript of his deposition;

(2) Whether the evidence was sufficient to sustain the burglary conviction;

(3) Whether the trial court erred in denying Defendant's motion to sequester the jury;

(4) Whether the trial court erred in denying Defendant's request to permit a post-verdict interrogation of the jurors regarding their exposure to publicity about the case;

(5) Whether the testimony of Defendant's girlfriend should have been excluded as a confidential communication;

(6) Whether the trial court erred in giving final instruction number 15.

The record discloses that on May 12, 1980, the home of Dennis Britton in Portage, Indiana was broken into, and several guns, a knife collection in an antique box, jewelry, and sheets were stolen. Thomas Waddell testified that he had been involved in more than twenty (20) burglaries in northwest Indiana in the previous five years and that he, Dave King, and Terry Purcell broke into Britton's home and took several guns. He further testified that he had seen the Defendant at King's residence at approximately 12:30 or 1:00 p.m. and again at approximately 5:30 p.m. on the day of the instant offense. On one of those occasions, the Defendant told Waddell that he was "good on my jobs [burglaries] that I done." Subsequently King explained to Waddell that "I had a job to do, and it was a burglary and he told me where it was at and who was supposed to go to it and who gave us the job to do." The morning after the burglary, King and Waddell took the guns to Defendant's house. At that time King asked the Defendant if the "job" they had done the night before was "all right." The Defendant responded, "Yes, as far as he was concerned." They then discussed how to dispose of the guns. Defendant agreed with King that the guns would be taken to a flea market in Kentucky. Waddell further stated that he and King had sold a lot of stolen guns to the Defendant and that he had previously accompanied the Defendant to Kentucky to dispose of stolen guns.

Ranze Grimes testified that he had known the Defendant for three or four years and had purchased weapons from him on several occasions. He stated that he and his brother purchased two guns from the Defendant at a flea market in Georgetown, Kentucky in May, 1980, and that subsequently the police confiscated thirty-three (33) of his guns. Following a computer check, the police determined that

two of the weapons confiscated had been stolen from Britton. When Grimes was questioned about those two guns, he told police that he had bought them from the Defendant, and he gave the officers one of Defendant's business cards. Thereafter, the police obtained from Defendant's girlfriend the wooden box which had been taken from Britton's home. Defendant was arrested and charged with the instant offenses.

## ISSUE I

Waddell first testified that he did not recall any conversations between himself and the Defendant or between King and the Defendant on the three occasions that they met on May 12 and 13, 1980. The Prosecutor then requested that Waddell be allowed to reread a deposition, which he had given approximately fifteen (15) months after the date of the crime, in order to refresh his recollection. The trial court granted said request.

Defendant argues that the trial court erred in so ruling because the deposition was not made "at or near the time of the occurrences" as is required by *Clark v. State*, (1853) 4 Ind. 156, 157 and *Carter v. State*, (1980) Ind.App., 412 N.E.2d 825, 827 (*transfer denied*).

■ Before making his ruling, the trial court asked Waddell, "Are you changing your testimony or is this something you just didn't remember?" Waddell responded, "It's something I didn't remember." Waddell admitted that he gave the deposition and stated that rereading it refreshed his memory. He then testified as to the conversations detailed above. In *Gaunt v. State*, (1983) Ind., 457 N.E.2d 211, 216, we were faced with a similar situation. There we noted:

"Under all of the circumstances, it was for the trial court to determine whether the fact that the deposition had been taken one year after the date of the crime, and nearly one year prior to the trial, rendered it unreliable by reason of remoteness. We see no abuse of discretion in the ruling."

Similarly, we find no abuse of discretion here.

## ISSUE II

With regard to Defendant's challenge to the sufficiency of the evidence to sustain the burglary conviction, we employ the following standard of review:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existence of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of the witnesses." (citations omitted).

*Loyd v. State*, (1980) 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied*, 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

■ Ind.Code § 35-41-2-4 (Burns 1979) provides that one who knowingly or intentionally "aids, induces, or causes another person to commit an offense commits that offense." An accomplice is criminally liable for everything done by his confederates which was a probable and natural consequence of their common plan. *Proctor v. State*, (1979) 272 Ind. 357, 360, 397 N.E.2d 980, 983. The accessory need not act out each element of the offense with which he is charged; the acts of one accomplice are imputed to all others. *Id.; Harris v. State*, (1981) Ind., 425 N.E.2d 154, 156.

■ While Defendant was not present at the scene of the burglary, Waddell testified that on the day of the burglary, he and King met with the Defendant who told him (Waddell) that he was "good on the jobs" that he had done. On the morning after the burglary, when King and Waddell took the guns to the Defendant's home, King asked the Defendant if the "job" they had done the night before was "all right." The Defendant said that it was. It is reasonable that a jury would infer from this testimony that Defendant was a participant in the burglary plan and, although not

present at the time of its commission, was knowingly involved in the crime.

## ISSUE III

Prior to his trial, Defendant was granted a change of venue from Porter County because of pre-trial publicity. He then filed a motion requesting the court to allow individual *voir dire* examination of the prospective jurors concerning their exposure to newspaper articles about him. Prospective jurors were so examined by the court when it read a list of questions prepared by the Defendant. All veniremen responding in the affirmative to any of the questions were removed from the courtroom. After selection of the jury, defense counsel moved to have the jury sequestered and, following a hearing on that motion, the request was denied.

Although conceding that sequestration of the jury is mandatory only when a defendant faces the potential sentence of death, *Corder v. State*, (1984) Ind., 467 N.E.2d 409, 414; *Cobb v. State*, (1980) 274 Ind. 342, 412 N.E.2d 728, 732, Defendant, nonetheless, argues that the trial court abused its discretion in denying his motion. We do not agree.

■ In order to show an abuse of discretion, a Defendant must show prejudicial exposure of the jury to trial publicity. *Corder v. State*, 467 N.E.2d at 414; *Sanders v. State*, (1981) Ind., 428 N.E.2d 23, 27; *Roberts v. State*, (1978) 268 Ind. 127, 131, 373 N.E.2d 1103, 1106. At the hearing upon the motion, Defendant introduced into evidence copies of articles which had appeared in the Gary *Post-Tribune*, the Valparaiso *Vidette-Messenger*, and the Chesterton *Tribune*. A witness from the *Post-Tribune* testified that his paper planned to cover the trial proceedings and that additional articles would appear in the paper. In addition, a reporter from a local radio station testified that reports of the trial proceedings would be broadcast on his radio station once or twice a day.

In denying the Defendant's motion, the trial court stated:

"[I]n view of the fact that every single one of the jurors has stated that they do not read the newspapers that have been mentioned here—and it is true that the radio station does cover this area, certainly, however I am satisfied based upon my experience with juries that they are very conscientious about the admonition of the court, which will be given twice a day before the noon break and at night to the effect that they will not listen to the radio station and they will not read anything concerning the trial. I am satisfied that they will follow that admonition. So the motion is overruled."

■ Defendant has failed to show that any jurors were actually exposed to adverse trial publicity. Moreover, the trial court admonished the jury each time it left the courtroom not to read or listen to any trial publicity. We find no abuse of discretion in the trial court's ruling.

## ISSUE IV

Following the jury's verdict on the substantive charges in the case at bar, but before it had announced its finding as to whether Defendant was an habitual offender, Defendant moved for a mistrial on the grounds that prejudicial publicity had been generated during the course of the trial. In support of his motion he introduced three additional newspaper articles which were prejudicial to the Defendant. The trial court denied the mistrial motion stating, "I have to repeat what I said before, that I have confidence in our jury to take the admonition seriously, and I don't believe there is any evidence in fact that they have done otherwise."

The Defendant then requested that the court interrogate the jurors by asking them three (3) questions, which he had submitted in writing to the court, to determine whether they had been exposed to such publicity. The court also denied that request, stating that the Defendant could not "get them to impeach their own verdict."

Defendant argues that the trial court committed reversible error when it denied his request to interrogate the jurors in

accordance with the procedures outlined in *Lindsey v. State*, (1973) 260 Ind. 351, 295 N.E.2d 819. It is apparent from his brief that Defendant is challenging only the convictions on the substantive charges and not the correctness of the habitual offender finding for which the evidence was overwhelming. Defendant relies upon the Court of Appeals' holding in *Fox v. State*, (1982) Ind.App., 439 N.E.2d 1385, to support his argument that a post verdict interrogation of the jury should have been held. However, subsequent to the filing of Defendant's brief, this Court granted transfer in the *Fox* case and vacated the decision of the Court of Appeals. *Fox v. State*, (1984) Ind., 457 N.E.2d 1088. Therein we held that a *Lindsey* interrogation of the jurors is not applicable in post verdict situations. We observed:

> "The Lindsey problem arose during trial, while the judge was in command and under the responsibility of seeing that it was conducted as fairly as possible. The case before us presents a post verdict problem. In *Lindsey*, it was reasonable to require the judge to act upon a showing of substantial possibility that the jury had been improperly exposed to extraneous material having a clear potential to taint its verdict. It is not reasonable, however, and would be counterproductive to require the judge, after a verdict has been returned, to run willy-nilly in search of evidence of a prejudicial impropriety upon the more *claim* of a *possible* impropriety which, if it did in fact, occur, *possibly* harmed the claimant. The *Lindsey* procedures are not appropriate and are not available for attacking a verdict. *Hardiman v. State*, (1978) 176 Ind.App. 557, 563, 377 N.E.2d 1384, 1388.

> "An Inquiry of the type required by Lindsey would, in its second stage, permit jurors to testify as to the influence the extraneous material had had upon their deliberations, and, therefore, to impeach their own verdict, which has never been permitted in this State.... Permitting a *Lindsey* inquiry after the verdict has been rendered would be contrary to

our well established precedent and would 'create an intolerable situation and no jury verdict would ever be lasting or conclusive." (citations omitted).

*Id.* at 1092.

In *Lindsey* the prejudicial material had been brought to the court's attention during the trial, but it took no action to interview the jury at that time. In the case at bar and in *Fox*, the prejudicial material was not brought to the attention of the trial court until after the verdict had been announced. The trial court did not err in its ruling.

## ISSUE V

Prior to trial, Defendant filed a motion *in limine* by which he sought to bar the testimony of his girlfriend, Debra Cummins, who had lived with him for four years, claiming that the marital privilege applied to her. At trial his objection on the same grounds was overruled. He assigns the court's ruling as reversible error. Although he concedes that we have refused to extend the husband-wife privilege to those who are not married, *see Gajdos v. State*, (1984) Ind., 462 N.E.2d 1017, 1021 and *Lane v. State*, (1977) 266 Ind. 485, 490–491, 364 N.E.2d 756, 760, he, nonetheless, asks that we consider the "change in public policy in regard to cohabitation" and that we reconsider our previous holdings. We are not persuaded to do so. There was no marital privilege which could bar Cummins' testimony.

## ISSUE VI

The Trial court gave its final instruction number 15, over Defendant's objection, as follows:

> "You are instructed that the Defendant's conduct or advice, if any, which influenced, incited, promoted or encouraged the perpetration of the crime of burglary at the time and place as charged, may be considered by you as circumstances along with all other evidence in determining whether or not the defendant aided

another in the commission of a burglary."

Defendant objected to the giving of this instruction, arguing that the evidence was insufficient to warrant its giving. He presents the same argument on appeal. Inasmuch as we have determined that the evidence was sufficient to sustain Defendant's conviction of burglary (See Issue II), there is no merit to this issue.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C.J., and HUNTER, DeBRULER and PIVARNIK, JJ., concur.