**Danny PALMER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 18A05–9409–CR–364.

Court of Appeals of Indiana.

Aug. 17, 1995.

Jon L. Orlosky, Orlosky, Bryan and Bryan, Muncie, for appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

BARTEAU, Judge.

Danny Palmer sold cocaine to a confidential informant in Heekin Park, in Muncie. The transaction was witnessed by three undercover police officers, all of whom identified Palmer as the perpetrator of the crime. The jury convicted Palmer of dealing in cocaine, a Class B felony.

## ISSUES

1. Whether the trial court erred in prohibiting the presentation of alibi testimony.

2. Whether the trial court erred in permitting the State to peremptorily strike a black venireman.

3. Whether the trial court erroneously instructed the jury based upon the State's charging information.

4. Whether the trial court erred in prohibiting Palmer from questioning a police officer about alleged drug use and suspension from the police force.

## ALIBI

Palmer first argues that the trial court erred in prohibiting evidence of his alibi defense. Palmer concedes that his notice of alibi was not timely filed under Ind. Code 35–36–4–1. As we recently discussed in *Preston v. State* (1994), Ind.App., 644 N.E.2d 585, 587–89, an accused who improperly files a notice of alibi may still offer his own alibi testimony under his constitutional right to testify in his own defense. *See, Baxter v. State* (1988), Ind., 522 N.E.2d 362, *reh'g denied; Campbell v. State* (1993), Ind., 622 N.E.2d 495. However, the accused is not similarly entitled to enter into evidence third-party alibi testimony. *Preston,* 644 N.E.2d

at 587 (citing *Harvey v. State* (1989), Ind., 542 N.E.2d 198).

Exclusion of a defendant's own alibi testimony is subject to harmless error analysis. *Id.* at 589. "Exclusion of evidence that does not affect the substantial rights of the defendant is harmless error." *Id.* The record does not indicate the means through which Palmer would have offered his alibi testimony. However, proceeding under the assumption that Palmer himself would have provided the alibi testimony, we find that the exclusion of the testimony can be no more than harmless error.[1]

Three witnesses identified Palmer as the perpetrator of the crime. Unlike the cases of *Preston* and *Campbell*, the identity of Palmer was not a crucial issue at trial. All three officers stated that they clearly observed Palmer approach the confidential informant and observed the transaction. One of the undercover officers was seated next to the confidential informant in the informant's car during the drug deal. Palmer approached the undercover officer and spoke with her, standing only a few feet away from her. The State offered overwhelming testimony that Palmer was the perpetrator of the crime, and the exclusion of his alibi evidence was, at most, harmless error.

### PEREMPTORY CHALLENGE

During voir dire, the prosecution struck a black man from the venire. Palmer raised an objection under *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69, arguing that the State had effectively removed all of the black veniremen from the panel.[2] The State explained that it was peremptory striking the juror because (1) he was a musician, (2) he avoided eye contact with the prosecutor, (3) he spoke very softly, (4) he had a strong emotional reaction to the subject of controlled sub-

stances, and (5) the prosecutor felt the venireman may be disruptive during jury deliberations. R. 402–03. The trial court overruled Palmer's *Batson* challenge, and removed the juror from the venire.

Palmer argues that the State removed the juror because he was a musician and because the juror would not make eye contact. Palmer concludes that this was a "weak explanation" for the peremptory strike, and if permissible would render *Batson* meaningless.

Two recent decisions address Palmer's contention. In *Purkett v. Elem* (1995), —— U.S. ——, 115 S.Ct. 1769, 131 L.Ed.2d 834, *reh'g denied*, the United States Supreme Court stated:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forward with a race-neutral explanation (step 2). If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.... *The second step of the process does not demand an explanation that is persuasive or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral."*

—— U.S. at ——, 115 S.Ct. at 1770–71 (citations omitted) (emphasis added). We agree with the trial court's finding that the State's explanation was valid on its face.

Similarly, in *Pfister v. State* (1995), Ind. App., 650 N.E.2d 1198, 1199–1200, we held that a defendant's explanation that he removed a juror from the venire because the juror was "very curt with his answers" and

---

1. An offer to prove the alibi defense was made immediately prior to trial at the direction of the trial court, but it does not indicate whether Palmer or a third party would have provided the alibi testimony. Palmer took the stand during trial, but only to state that he did not wish to testify on his own behalf. Palmer made no attempt to enter evidence of the alibi during trial. The parties do not raise the issue of whether

Palmer was required to attempt to enter the alibi evidence during trial in order to preserve the issue for appeal. Under our assumption we need not address this question to resolve this issue.

2. The record indicates that the court had previously removed one other black man from the venire due to his age.

would look neither the defendant nor his attorney "in the eye" was a satisfactory race-neutral explanation. In *Pfister,* we agreed that the reason for the removal of a juror may well be based upon the juror's "bare looks and gestures," or often may be for reasons the attorney cannot state beyond the lawyer's "experienced hunches and educated guesses." 650 N.E.2d at 1200. The law is clear that "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Elem,* —— U.S. at ——, 115 S.Ct. at 1771.

The State's race-neutral explanation need not be persuasive or even plausible, but only valid on its face. *Id.* The trial court determined that Palmer failed to demonstrate purposeful racial discrimination in light of the prosecution's stated reasons for removing the juror. We find that the trial court's conclusion is supported by the record, and affirm its judgment.

## JURY INSTRUCTION

■ Palmer also argues that the trial court erroneously instructed the jury regarding the crime of dealing in cocaine, due to the language of the charging information. Indiana Code 35–48–4–1 sets forth the elements of the crime of dealing in cocaine, and states in relevant part:

(a) A person who:

(1) knowingly or intentionally:

(A) manufactures;

(B) finances the manufacture of;

(C) delivers; or

(D) finances the delivery of;

cocaine ...;

commits dealing in cocaine....

The information charging Palmer with dealing in cocaine reads as follows, in pertinent part:

The undersigned says that on or about July 21, 1993 in Delaware County, State of Indiana, Danny Lee Palmer did knowingly deliver a controlled substance, to-wit: Cocaine to an [sic] confidential informant, contrary to the form of the statutes in such cases made and provided by I.C. 35–48–4–1....

R. 15. While the State only charged that Palmer "knowingly" delivered cocaine, the trial court instructed the jury that they could convict Palmer of dealing in cocaine upon finding that he "knowingly or intentionally" delivered cocaine. R. 477–478. Palmer raised a timely objection to this instruction, and now appeals from the denial of his objection.

Palmer contends that, since the State chose to charge him only with "knowingly" delivering cocaine, it was error to expand the charged crime by also including "intentionally." Palmer argues that he was not given the opportunity to prepare a defense against the element of "intentionally" delivering cocaine.

Palmer cites to our decision in *Trevino v. State* (1981), Ind.App., 428 N.E.2d 263. In *Trevino,* the information charged the defendant with "knowingly" committing rape, but the trial court instructed the jury on "intentionally" committing rape. We concluded:

The highest degree of culpability is "intentionally." If conduct is engaged in "intentionally," it necessarily follows that it must be engaged in "knowingly" also. Thus, if the jury found that Trevino "intentionally" raped K.B., it necessarily had to have found he "knowingly" raped her.

428 N.E.2d at 267. Palmer's conclusion that the court's "knowingly or intentionally" instruction expanded the charged crime is erroneous. The State charged Palmer with "knowingly" delivering cocaine. If the jury acted under the "intentionally" part of the instruction, then they necessarily concluded that Palmer also acted "knowingly." *Id.* If anything, the court's instruction placed a greater burden of proof on the State by including the higher standard of "intentionally," rather than merely "knowingly." The instruction does not constitute reversible error.

## DRUG USE AND SUSPENSION

■ Finally, Palmer contends that the trial court erred in prohibiting the admission of testimony concerning the drug use and related suspension of one of the undercover police officers. Palmer sought to cross examine one of the officers in an attempt to discredit the officer as a witness. The trial court granted the State's motion in limine and precluded the matter.

Indiana Evidence Rule 608(a) permits the attack of a witness's credibility by evidence in the form of opinion or reputation, but only to the extent that the evidence refers to the witness's truthfulness. The defendant may not inquire into specific instances of conduct, except for evidence that the witness was convicted of a crime provided for in Ind. Evidence Rule 609. Evid.R. 608(b).

Under these rules, Palmer could not impeach the officer's credibility with evidence specific to an allegation concerning the officer's drug use or related suspension. Such does not constitute opinion of the officer's reputation under Evid.R. 608(a), and is not encompassed by crime under Evid.R. 609. Further, Palmer has not shown that the officer was convicted of any crime, as required under Evid.R. 609. A witness may not be impeached by specific acts of misconduct that have not resulted in criminal convictions. *Hicks v. State* (1989), Ind., 544 N.E.2d 500, 505.

The scope and extent of cross-examination is within the discretion of the trial court. We will reverse only upon finding an abuse of that discretion. *Stonebraker v. State* (1987), Ind., 505 N.E.2d 55, 58, *reh'g denied.* We have held that drug use may not be used to impeach a witness unless the evidence tends to show that the witness was under the influence of drugs either at the time of trial or at the time of the occurrence testified to, or the evidence tends to show that the witness's ability to perceive, remember and testify are substantially affected by the drug usage. *Terrell v. State* (1987), Ind. App., 507 N.E.2d 633, 637, *reh'g denied; Lusher v. State* (1979), 181 Ind.App. 63, 390 N.E.2d 702, 704. There is nothing in the record that indicates any of these subjects were concerns in this case. The trial court did not abuse its discretion in excluding the evidence.

AFFIRMED.

SHARPNACK, C.J. and FRIEDLANDER, J. concur.