UNITED STATES of America, Plaintiff,

v.

Rufus A. CUNNINGHAM, Defendant.

No. 95 CR 438.

United States District Court,
Northern District of Illinois,
Eastern Division.

Oct. 24, 1995.

See also 891 F.Supp. 460.

Patrick M. Collins, U.S. Attorney's Office, Chicago, IL, for plaintiff.

Lynn C. Hartfield, Federal Defender Program, Chicago, IL, for defendant.

*MEMORANDUM OPINION AND ORDER*

GETTLEMAN, District Judge.

On April 13, 1994, a Chicago Sun–Times reporter notified the United States Postal Service that mail was located under the porch of a house at 1834 South Troy, Chicago, Illinois (the "house").[1] Acting on this tip, postal inspectors retrieved approximately 768 pieces of identifiable mail that were designated for delivery in October 1987 and March 1988. Three canvas mailbags were also discovered under the porch.

Investigation revealed that: defendant Rufus Cunningham had owned the house from at least May 1986 to July 1993; defendant "controlled" the house until at least August 1992; defendant had been a letter carrier for the Postal Service from May 1986 to September 1991; and the mail discovered under the porch had been assigned to defendant for delivery in October 1987 and March 1988.

On March 23, 1995, the grand jury returned a two count indictment against defendant, charging him with violating 18 U.S.C. § 1703(a) ("§ 1703(a)") by unlawfully secreting, detaining and delaying the United States mail. On June 26, 1995, this court dismissed the indictment because it was returned beyond the five year limitations period contained in 18 U.S.C. § 3282. The court concluded that because the actions proscribed by § 1703(a) are not "continuing offenses," the statute began to run at the time the postal employee failed to deliver the mail on its designated date. *United States v. Cunningham*, 891 F.Supp. 460, 463–464 (N.D.Ill.1995) ("*Cunningham I* ").

The government did not take an appeal from the decision in *Cunningham I*. Instead, on July 26, 1995, the grand jury returned a new two count indictment against defendant charging him with violating 18 U.S.C. § 1708 ("§ 1708") by "conceal[ing] and unlawfully hav[ing] in his possession United States mail ... which mail had been stolen, taken, embezzled, and abstracted, knowing the same to have been stolen, taken, embezzled, and abstracted."

Not surprisingly, defendant has moved to dismiss the second indictment on the same limitations grounds that succeeded in *Cunningham I*. In addition, defendant argues that the indictment should be dismissed because it is the product of vindictive prosecution. For the reasons set forth below, defendant's motion is denied without prejudice.

### STATUTE OF LIMITATIONS

18 U.S.C. § 3282 provides that "[e]xcept as otherwise provided by law, no person shall be prosecuted ... for any offense ... unless the indictment is found ... within five years next after such offense shall have been committed." Defendant argues that the indictment, which was returned on July 26, 1995, can be sustained only if it charges a violation occurring after July 26, 1990. Here, the two counts of the indictment allege that the pieces of mail in question were postmarked for delivery on October 27, 1987, and March 23, 1988, and in the possession of defendant on those dates. Therefore, according to defendant, the indictment was returned outside the statute of limitations period and must be dismissed.

The government argues that a violation of 18 U.S.C. § 1708 is a "continuing offense" that began for Count I on or about October 17, 1987, and for Count II on or about March 23, 1988, and continued until at least August 1992, when defendant allegedly last exercised possession and control over the residence where the mail was found. Therefore, according to the government, the statute of limitations did not begin to run until approximately three years before the instant indictment was returned.

In *Cunningham I*, this court noted the following principles (891 F.Supp. at 462):

> As a general rule, statutes of limitation begin to run when the crime is complete. *Pendergast v. United States*, 317 U.S. 412, 418, 63 S.Ct. 268, 270, 87 L.Ed. 368 (1943). A criminal offense is generally complete and the limitations period begins to run when each element of the offense has occurred. Those crimes labeled as "continuing offenses," however, function as excep-

---

**1.** The recitation of the facts herein is taken from the government's allegations against Mr. Cunningham, and are assumed to be true only for purposes of this opinion.

tions to this general rule. *United States v. Beard,* 713 F.Supp. 285, 290 (S.D.Ind. 1989). Such exceptions should not be created lightly, for by enacting 18 U.S.C. § 3282 Congress "has declared a policy that the statute of limitations should not be extended 'except as otherwise provided by law.'" *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970) (quoting 18 U.S.C. § 3282).

As noted in *Toussie,* these principles indicate that the doctrine of continuing offenses should be applied only in limited circumstances since "the tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term." *Id.* This does not mean, however, that a particular offense should never be construed as continuing. It means only that such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion, or the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one. *Id.*

■ In determining whether the continuing offense exception is applicable in the instant case, this court, once again, is ever mindful of the Supreme Court's mandate that this exception must be interpreted narrowly, because a statute of limitations is designed to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has intended to punish, and that criminal limitations statutes are to be liberally construed in favor of repose. *Toussie,* 397 U.S. at 114–115, 90 S.Ct. at 859–60.

At the outset, the court notes that there are no reported decisions that have expressly addressed the question of whether § 1708 describes a continuing offense. Section 1708 provides in pertinent part:

Whoever buys, receives, or conceals, or unlawfully has in his possession, any letter, postal card, package, bag, or mail, or any article or thing contained therein, which has been stolen, taken, embezzled, or abstracted, as herein described, knowing the same to have been stolen, taken, embezzled, or abstracted. . . .

Shall be fined under this title or imprisoned not more than five years, or both.

■ The statute does not expressly provide that the proscribed conduct is a continuing offense. As this court noted in *Cunningham I,* Congress has in the past explicitly declared that certain offenses are to be treated as continuing. 891 F.Supp. at 463. Because Congress has not included such continuing offense language in § 1708, the first prong of *Toussie* is not met.

The second prong of the *Toussie* provides that the continuing offense doctrine will apply if Congress assuredly intended that the offense be treated as a continuing one. *Toussie,* 397 U.S. at 115, 90 S.Ct. at 860. Defendant argues that § 1708 does not proscribe conduct which is, by its very nature, a continuing offense. Consequently, according to defendant, the statute of limitations begins to run for the crime of possessing stolen mail when the offender takes custody of mail that he knows to have been stolen. The government argues that the possessory element of § 1708 indicates that it is in fact a continuing offense. Thus, according to the government, the statute of limitations does not begin to run so long as the offender possesses the stolen mail. The court agrees with the government.

First, it is important to examine the language of the statute. Section 1708 punishes a person who knowingly "buys, receives, or conceals, or unlawfully has in his possession" any stolen mail. Congress did not limit the proscribed conduct to the purchase, receipt or concealment of mail, but included unlawful possession of such mail regardless of when the defendant first took possession.

■ In *United States v. Blizzard,* 27 F.3d 100 (4th Cir.1994), the defendant was charged with concealing and retaining stolen government property in violation of 18 U.S.C. § 641. The court held that "[t]he government may prosecute a person who continues to possess unlawful drugs irrespective of the date he first possessed them. . . . '[P]ossession is by nature a continuing offense. . . .'" *Id.* at 102. (quoting *Jordan v. Virginia,* 653

F.2d 870, 875 (4th Cir.1980)). The gravamen of the offense of concealing and retaining stolen government property "is simply the possession of that property." *Id.* at 103.[2]

In a very real sense, possession of stolen mail under § 1708 is not necessarily a continuing offense, but may consist of the discrete act of knowingly possessing stolen mail at a particular point in time. Thus, in the instant case, if the government proves at trial, beyond a reasonable doubt, that defendant knowingly possessed stolen mail at a date later than July 26, 1990, a jury would be entitled to return a verdict of guilty.

According to the government's brief in opposition to the motion to dismiss, its claim that defendant possessed the stolen mail depends on his control of the house, and presumably the porch, under which the mail was found. The government thus appears to be contending that defendant had "constructive," as opposed to "actual" possession of the mail. Actual possession exists "when a tangible object is in the immediate possession or control of the party"; constructive possession exists "when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *United States v. Taylor,* 728 F.2d 864, 868 (7th Cir.1984). To prove its case, therefore, the government will have to establish that at some time after July 26, 1990, defendant knew he had the power, and intended to exercise dominion and control over, the mail that allegedly lay under the porch of the house.

At this stage of the proceedings it is too early to tell whether the government can meet its burden of proving these essential facts beyond a reasonable doubt. It is not too early to conclude, however, that the indictment satisfies the second prong of the *Toussie* test, because Congress clearly in-tended possession of stolen mail to be an offense that begins when the defendant first obtains possession and continues so long as the defendant possesses the mail. Accordingly, the court denies defendant's motion to dismiss the indictment for violating the statute of limitations, without prejudice to raise this issue at trial.

## VINDICTIVE PROSECUTION

Defendant argues that the current indictment is the product of prosecutorial vindictiveness. Specifically, defendant argues that he was re-indicted and charged with a violation of 18 U.S.C. § 1708. because he successfully challenged the March 23, 1995, indictment. Defendant asserts that the prosecutorial vindictiveness is presumed because the penalty for a violation of § 1708 is potentially higher than under § 1703(a). In addition, defendant argues that negative press coverage of *Cunningham I,* principally by the reporter who had reported the mail under the porch that lead to the indictment, the government's decision to re-indict rather than appeal, and the fact that the July 26, 1995, indictment was based on the same facts as the first indictment indicate an improper motive. The government argues that it is simply exercising its option to pursue an alternative theory of prosecution for which it has substantial evidence of defendant's guilt.

■ A prosecutor may not punish a defendant for exercising a statutory or constitutional right. *United States v. Goodwin,* 457 U.S. 368, 372, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982). The facts of a case must "implicate the institutional bias against retrying issues that already have been decided or implicate a personal stake of the prosecutor in the proceedings; in other words, there must be a realistic likelihood of vindictiveness." *United States v. Heidecke,* 900 F.2d

---

**2.** The parties do not discuss the charge in the indictment that defendant concealed stolen mail in violation of § 1708, and the government describes the indictment as alleging only "possession of stolen mail." The court notes that, like the statute in *Blizzard,* § 1708 includes both discrete and continuing offenses. As noted above, the *Blizzard* court regarded "concealing and retaining" stolen government property as the equivalent of "possession" of that property. In the context of § 1708 and the rationale of *Cunningham I,* this court concludes that the act of concealment of stolen mail is a discrete offense that is not the equivalent of possession of such mail, a continuing offense. Accordingly, the court finds that the charge of concealment in the instant indictment is barred by the five year statute of limitations, and *sua sponte* strikes that language from the indictment.

**170**

1155, 1159 (7th Cir.1990). Especially in the pretrial context, prosecutorial vindictiveness should not be presumed; rather, some type of prosecutorial animus must be shown. *Id.* Defendant "must offer sufficient evidence to raise a reasonable doubt that the government acted properly in seeking the indictment." *Id.* at 1160. Defendant has failed to meet his burden.

The mere potential of a higher penalty under § 1708 as compared to § 1703(a) is insufficient to raise a presumption of vindictiveness. Moreover, defendant has failed to provide any evidence that would contravene the government's assertion that it is merely seeking to prosecute a case in which it believes the public trust has been intentionally violated. The court finds nothing suspicious or sinister in the government's decision to reindict defendant rather than appeal the dismissal of the March 25, 1995, indictment. As the government points out, had the government appealed and lost, nothing would have prevented it from seeking the current indictment.

Similarly, any negative press coverage or the fact that this indictment is based on the same alleged facts as the March 23, 1995, indictment does not provide "sufficient evidence to raise a reasonable doubt that the government acted improperly in seeking the indictment," as required by *Heidecke.*

## *CONCLUSION*

For the reasons set forth above, defendant's motion to dismiss the indictment is denied without prejudice to defendant's right to revise the statute of limitations issue at trial.