**UNITED STATES of America, Plaintiff,**

v.

**Rufus A. CUNNINGHAM, Defendant.**

**No. 95 CR 438.**

United States District Court,
N.D. Illinois,
Eastern Division.

Feb. 26, 1996.

818

Lynn C. Hartfield, Federal Defender Program, Adam P. Merrill, Kirkland & Ellis, Chicago, IL, for defendant.

Patrick M. Collins, United States Attorney's Office, Chicago, IL, for U.S. Attys.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, District Judge.

After deliberating all of ten minutes, the jury in this case returned a verdict finding defendant, a former U.S. Postal Service mail carrier, guilty of possessing stolen mail in violation of 18 U.S.C. § 1708. Defendant has renewed his motion for judgment of acquittal under Fed.R.Crim.P. 29, which was originally filed at the close of the government's case, and has also moved for a new trial pursuant to Fed.R.Crim.P. 33. The issue presented is whether the government proved beyond a reasonable doubt that defendant had constructive possession of the mail within the five year statute of limitations period preceding the indictment. For the reasons set forth below, the court grants defendant's motion for acquittal.

### FACTS

Defendant was a mail carrier from May 1986 until September 1991. From 1986 until June 1988, defendant and his wife resided at a two-unit home located at 1834 South Troy, Chicago, Illinois (the "House"). The House was sold by defendant and his wife in 1993. While defendant resided at the House, his family occupied the first floor unit and rented the second floor. When defendant moved from the House in 1988, the second floor tenant moved to the first floor, and the second floor was rented to a new tenant. Thereafter, until he sold the house in 1993, defendant continued to store personal property in locked rooms in the basement and in the first floor back porch, which was also locked. Defendant had the only key to these locks. He would visit the house monthly to collect rent and mail that had been delivered to him,[1] and at other times to retrieve some of the personal property that was kept in the locked areas.

On April 13, 1994, a quantity of mail was discovered beneath the back porch of the House. The mail bore postmarks from October 17, 1987, and March 23, 1988, and was from routes for which defendant was to have delivered on those dates. The evidence establishes that defendant was responsible for

---

1. Defendant did not change his address with the Post Office after moving from the house.

failing to deliver this mail, and that instead he put it under his back porch. According to photographs introduced by the government at trial, the porch is approximately three to four feet off the ground, and the opening had a light chicken wire fence tacked around it during the time defendant lived at the House.[2] The photograph reveals that the area under the porch is exposed to the elements, that anyone could easily obtain access to it, and that items of personal property have been discarded under the porch.

On March 23, 1995, the Grand Jury indicted defendant for unlawfully secreting, detaining and delaying the United States mail, in violation of 18 U.S.C. § 1703(a). This court dismissed that indictment, holding that the conduct proscribed by § 1703(a) is not a "continuing offense," and that the five year statute of limitations contained in 18 U.S.C. § 3282 expired in 1993. *United States v. Cunningham,* 891 F.Supp. 460 (N.D.Ill.1995) ("*Cunningham I*").

On July 26, 1995, the Grand Jury returned a second indictment against defendant, this time charging him with possession of stolen mail in violation of 18 U.S.C. § 1708. This court denied defendant's motion to dismiss the second indictment, holding that possession of stolen mail is a continuing offense. The court further held that the government would be required at trial to prove beyond a reasonable doubt that defendant "knowingly possessed stolen mail ... later than July 26, 1990," and that this burden would require proof that defendant "knew he had the power, and intended to exercise dominion and control over, the mail that allegedly lay under the porch of the [H]ouse." *United States v. Cunningham,* 902 F.Supp. 166, 169 (N.D.Ill.1995) ("*Cunningham II*"). The final instructions to the jury conformed to this ruling.

At the close of the government's case, defendant moved for acquittal pursuant to Fed. R.Crim.P. 29(a). The court reserved ruling until after the verdict, pursuant to Rule 29(b). Defendant did not testify at the trial.

Ten minutes after retiring for deliberation, the jury announced that it had reached a verdict of guilty. Thereafter, defendant timely moved for acquittal notwithstanding the verdict, pursuant to Rule 29(c).

### DISCUSSION

 To set aside a verdict of guilty pursuant to Rule 29, the defendant must demonstrate that no rational juror, viewing the evidence in the light most favorable to the government, could have found defendant guilty beyond a reasonable doubt. *United States v. Klein,* 910 F.2d 1533, 1538 (7th Cir.1990). In determining whether defendant has met this heavy burden, the court must bear in mind that "it is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences." *Id.*

 In the instant case, the facts are not seriously in dispute. There is no question in the court's mind that defendant stole the mail, threw it under his porch, continued to reside in the House until 1988, had the power to control the House, the porch and the stolen mail until 1993, and in fact exercised control over certain areas and aspects of the House until that year. The government has never contended that defendant exercised *actual* possession of the stolen mail, arguing instead that the evidence demonstrates beyond a reasonable doubt that he had *constructive* possession within the five years preceding the date of the indictment, July 26, 1995. At this stage in the proceedings, with the Rule 29 standards firmly in mind, the court accepts as fact that, at and after that date, defendant had the power to exercise control over the mail lying beneath the porch. The issue, therefore, is whether there was sufficient evidence, if any, that defendant intended to exercise that power. *United States v. Taylor,* 728 F.2d 864, 868 (7th Cir.1984); *Cunningham II.*

As defendant points out in its motion for acquittal, intent "may not ordinarily be proved directly because there is no way of

---

2. The first floor tenant testified that the fence was up during the period she lived there (from sometime before June 1988 until 1993), although the fence had been torn down by the time the government photographed it in 1994. It is unclear whether the fence was intact during the entire period the tenant lived at the house.

directly scrutinizing the workings of the human mind. In determining ... what a person intended at a particular time, [it is appropriate] to consider any statements made or acts by that person and all other facts and circumstances received in evidence...." Edward J. Devitt, et al., *Federal Jury Practice and Instructions § 17.07 (1992)*. The court has searched the record in vain for any evidence to support a reasonable inference that defendant intended to exercise control over the stolen mail within the five years preceding the indictment. Indeed, the record indicates the contrary.

There is certainly no direct evidence that defendant intended to exercise control. No witness testified that defendant ever did or said anything to indicate that he was mindful of where the mail had been discarded or intended to return to it after he disposed of it in 1987 and 1988. More important, defendant did keep property at the House over which he intended to exercise control, but that property was kept under lock and key. The only inference that can be drawn from this undisputed evidence is that when plaintiff recognized that he had property worth preserving that he kept at the House, he secured that property.

The stolen mail, which was discovered in a deteriorated condition, obviously did not fit into the category of property defendant wished to secure. It was abandoned under an open porch which, taking the government's evidence at its best, was secured by a flimsy chicken wire fence that the photograph indicates was easily removed by natural or human forces. Although the government is correct in pointing out that anyone wishing to access the area beneath the porch would have had to trespass on defendant's property, that would appear to have been an easy matter. Certainly, no one wishing to secure property or exercise control over it would throw it under an open porch as defendant did with the stolen mail. Defendant no

more wished to control this mail than if he had dumped it in a river or buried it in the woods—out of sight, out of mind, abandoned to the elements.

It should also be noted that defendant never used any of this mail. Although there were checks, train tickets and, perhaps, other valuables contained within the mail, none of the mail was opened, and there is absolutely no evidence that defendant converted any of it to his personal use. Nor is there any evidence that defendant ever revisited the area where he dumped the mail, as he did with the secured portions of the House that he visited to retrieve and peruse personal property he intended to control.

■ The court does not lightly disturb the verdict of a jury that heard the evidence and the witnesses. In the instant case, unlike most, there are several factors which impugn the verdict in addition to the lack of evidence noted above. First, the witnesses' credibility was never a serious issue in this case. The facts are basically uncontested, and the defendant—the only person who knows the truth—exercised his Fifth Amendment right not to take the stand.

In addition, the court is disturbed by the extraordinarily short time taken by the jury to reach its decision. In the ten minutes or so between the time the jury left the courtroom and the time the court security officer informed the court that a verdict had been reached, the jury would hardly have had enough time to choose a foreperson and review the instructions. It was not possible—especially in light of the relatively complicated nature of the evidence relating to constructive possession—that the jurors actually "deliberated" the evidence, as they were instructed to do.[3] It appears to the court that the jury convicted defendant of stealing the mail in 1987 and 1988—of which there was little doubt—rather than of possessing the

---

**3.** The court gave Seventh Circuit Instruction 7.06, which required the jury to "give fair and equal consideration to *all* the evidence and *deliberate* with the goal of reaching an agreement which is consistent with the individual judgment of each juror." (Emphasis added.) Webster's Third New International Dictionary (1993) defines "deliberate" as "[c]haracterized by or re- sulting from slow, careful, thorough calculation and consideration of effects and consequences; not hasty, rash or thoughtless." Based on the court's observation of the witnesses, testimony, and other evidence presented at the trial, the court concludes that the jury failed to follow the instruction to deliberate and consider all the evidence.

mail after July 26, 1990. Although brief jury deliberation is not, in itself, sufficient basis to disturb a verdict, "[w]hen brief jury deliberation is coupled with a verdict that is contrary to the great weight of the evidence … it creates a situation where the district court has an affirmative duty to set aside the verdict." *Kearns v. Keystone Shipping Company*, 863 F.2d 177, 182 (1st Cir.1988). Such is the case here.

In reluctantly reaching its decision, the court does not wish to minimize in any way the maliciousness of defendant's conduct. It is hard to imagine a more personal crime than stealing someone's mail. In the instant case, the stolen mail included welfare and Medicare checks, bills and overdue notices, wedding responses, personal correspondence, tax documents, and a scholarship nomination letter, among other items. The intended recipients have never received this important mail, no doubt causing great inconvenience and embarrassment, and most likely actual damage, to these innocent postal patrons. Defendant should be condemned for his dereliction of the sacred duty assumed by all postal carriers.

■ This condemnation, however, cannot overcome the fact that we are bound by the law, including the statute of limitations, that governs all criminal proceedings. That defendant has escaped the punishment he so richly deserves is not as important as the observance of the law. While it is disturbing that anyone can beat the rap by the passage of enough time to invoke the statute of limitations, the principles underlying limitations of criminal and civil actions have been deemed for generations to supersede the possibility that the guilty may indeed go free. The law "protect[s] individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of the acts in the far-distant past." *Toussie v. United States*, 397 U.S. 112, 114–115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). Thus, statutes of limitation applying to criminal prosecutions should be "liberally construed in favor of repose." *United States v. Scharton*,

285 U.S. 518, 522, 52 S.Ct. 416, 417, 76 L.Ed. 917 (1932).

By enacting 18 U.S.C. § 3282, Congress has determined that a person cannot be prosecuted if the crime for which he or she is charged took place more than five years before the indictment was returned. The jury in the instant case was presented with no evidence from which it could have determined that defendant had constructive possession of the stolen mail after July 26, 1990. Its verdict of guilty, therefore, cannot stand.

## CONCLUSION

For the foregoing reasons, the court grants defendant's motion for acquittal, and denies defendant's motion for a new trial as moot.