**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Rufus A. CUNNINGHAM,
Defendant–Appellee.**

No. 96–1727.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 22, 1996.

Decided Feb. 26, 1997.

Joel D. Bertocchi (argued), Office of the United States Attorney, Criminal Division, Chicago, IL, Barry Rand Elden, Chief of Appeals, Office of the United States Attor-ney, Criminal Appellate Division, Chicago, IL, for U.S.

Lynn C. Hartfield (argued), Office of the Federal Defender Program, Chicago, IL, Adam P. Merrill, Kirkland & Ellis, Chicago, IL, for Rufus A. Cunningham.

Before POSNER, Chief Judge, and WOOD, Jr., and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

When a jury returns a verdict, it does not supply its reasons. The jury deliberates, in private, attempting to follow its instructions. Eventually, the jury delivers a one-or two-word verdict: "guilty" or "not guilty." "[A] juror may not testify as to any matter or statement occurring during the course of the jury's deliberations." Fed.R.Evid. 606(b). When a defendant challenges the verdict, in a motion to set it aside, the verdict must be upheld unless "the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Theodosopoulos,* 48 F.3d 1438, 1444 (7th Cir.) cert. denied — U.S. —, 116 S.Ct. 191, 133 L.Ed.2d 128 (1995). "It is the jury's exclusive function to evaluate the credibility of witnesses, resolve conflicts in evidence, and draw reasonable inferences from the evidence presented." *United States v. Klein,* 910 F.2d 1533, 1538 (7th Cir.1990) (citing *United States v. Reed,* 875 F.2d 107, 111 (7th Cir.1989)).

The district judge in this case believed so strongly that the jury could not have properly reached its announced verdict that he overturned it. But the verdict was the jury's to reach. Since there was sufficient evidence in the record to support the verdict, we must reverse and reinstate it.

I. Factual Background

In April of 1994, Rufus Cunningham was arrested by United States Postal Inspectors. Cunningham had been delivering the mail in the Chicago area since May 1986. Unfortunately for the many people on his route, he chose not to deliver the mail on October 17, 1987 and March 23, 1988. Originally indicted

and charged with "unlawfully secret[ing], detain[ing], and delay[ing] approximately 750 pieces of United States mail" in violation of 18 U.S.C. § 1703(a), this charge was properly dismissed as barred by the statute of limitations. Indictment, April 15, 1994; *United States v. Cunningham*, 891 F.Supp. 460 (N.D.Ill.1995); 18 U.S.C. § 3282.

The government re-indicted Cunningham a year later, charging him with "conceal[ing] and unlawfully hav[ing] in his possession United States mail, . . . which mail had been stolen, . . . knowing the same to have been stolen" in violation of 18 U.S.C. § 1708. Indictment, July 27, 1995. On January 9, 1996, jury selection began. By the afternoon of January 10, 1996, the government rested its case. The defense presented its case the next morning, the jury heard closing arguments, received its instructions and retired to deliberate by lunchtime. After about ten minutes of deliberations the jury found Rufus Cunningham guilty. The district court then heard arguments from the parties and granted the defendant's Rule 29 motion for judgment of acquittal, finding that no evidence had been presented to show that Cunningham had maintained constructive possession with intent to possess the mail within the statute of limitations.[1] *United States v. Cunningham*, 916 F.Supp. 817 (N.D.Ill.1996).

The jury's verdict must be sustained if, after viewing the evidence in the light most favorable to the government, " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *United States v. Byerley*, 999 F.2d 231, 234 (7th Cir.1993) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979)). The drawing of inferences is the province of the jury. Here, the jury was not required to pile inference upon inference, but merely to draw one logical inference supported by the evidence. See *United States v. Sullivan*, 903 F.2d 1093, 1099 (7th Cir.1990) (" 'piling inference upon inference' [is] a practice disapproved of by the Supreme Court.") (citing *Anderson v. United States*, 417 U.S. 211, 224, 94 S.Ct. 2253, 2262, 41 L.Ed.2d 20 (1974)).

II. Constructive Possession

Cunningham took the mail he was supposed to deliver on October 17, 1987 and March 23, 1988, and put it under his porch instead. From the time he put the mail under the porch (which was enclosed by chicken wire and wood) it does not appear that he made any further use of the mail.[2] Thus the government's theory contemplated that Cunningham had constructive possession of the mail, rather than actual possession. In order to convict, the jury had to find that Cunningham " 'knowingly possessed stolen mail' " within the period of limitations. *Cunningham*, 916 F.Supp. at 819 (quoting *United States v. Cunningham*, 902 F.Supp. 166, 169 (N.D.Ill.1995)). This meant the jury had to find that Cunningham " 'knew he had the power, and intended to exercise dominion and control over, the mail.' " *Id.*

The government argued throughout its opening and closing remarks that Cunningham not only intended to exercise control over the mail but actually did exercise control by successfully keeping it hidden for eight years. From the beginning of the trial the government made this point:

> If that mail stayed hidden, Mr. Cunningham would keep his job. And you'll hear that he had his job until September of 1991. That was the important reason that Mr. Cunningham kept that mail on his property. You won't hear evidence that he threw it away; you won't hear evidence that he dumped it. You will hear evidence that he had it at 1834 South Troy, a property that he had control over.

Transcript at 176. This is, therefore, a one issue case: whether Rufus Cunningham maintained constructive possession of the mail after July 26, 1990. In closing argument the government repeatedly argued its theory of possession:

> [T]he defendant didn't dump the mail in a dumpster in some alley. He didn't

---

1. Actual possession was not argued by the government in this case.

2. While some of the mail had been opened, none of the contents had ever been used for any purpose. No checks were cashed or credit cards used.

abandon it in a forest preserve. He didn't throw it in his own garbage can. What he chose to do was keep the mail.

. . . .

Now, the reason the defendant chose to keep this mail, possess it for all those years, is so that he could keep it hidden, so he could keep anyone from finding it, and so his job would not be in danger.

. . . .

You have a porch under your house. You store the barbecue grill there. . . . You're in possession of those items. They're on your property . . . . so somebody could trespass on your property and steal those items, but you have the power, they are on your property, you intend to possess them, and they are yours. And you are in possession. So think about it in a common sense way.

. . . .

Abandonment, abandonment. That's what you keep hearing. Ladies and gentlemen, use your common sense. If you store something under your back porch, your back porch that you own, that someone would have to commit a crime, knowingly trespass onto your property and take it, are you in constructive possession of that object?

Transcript at 325, 328, 333, 354. When reviewing the evidence, the district court did not view the evidence in the light most favorable to the government. The district court drew its own inferences and conclusions:

The stolen mail, which was discovered in a deteriorated condition, obviously did not fit into the category of property defendant wished to secure. It was abandoned under an open porch which, taking the government's evidence at its best, was secured by a flimsy chicken wire fence that the photograph indicates was easily removed by natural or human forces. Although the government is correct in pointing out that anyone wishing to access the area beneath the porch would have had to trespass on defendant's property, that would appear to have been an easy matter. Certainly, no one wishing to secure property or exercise control over it would throw it under an open porch as defendant did with the stolen mail. Defendant no more wished to control this mail than if he had dumped it in a river or buried it in the woods—out of sight, out of mind, abandoned to the elements.

*Cunningham,* 916 F.Supp. at 820.

If we view the evidence in the light most favorable to the government, as we must in a motion for judgment for acquittal, see *United States v. Sax,* 39 F.3d 1380, 1385 (7th Cir. 1994), can we say that there is no evidence to support the proposition that undelivered mail under a porch, behind chicken wire, inside a fenced yard, on private property is a subject of possession rather than abandonment? We cannot. If Cunningham had kept the mail in the trunk of his car there would be no question that he had possession of the mail. We think, and more importantly a reasonable jury could think (and apparently did think), that Cunningham had the intent to exercise control over the mail found under his porch. Federal Rule of Criminal Procedure 29 states, "The court shall order the entry of judgment of acquittal . . . if the evidence is insufficient to sustain a conviction." Fed. R.Crim.P. 29(a). Thus, " '[w]e review the evidence and all reasonable inferences in the light most favorable to the government, and will reverse a conviction only if no rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt.' " *Sax,* 39 F.3d at 1385.

III.   Length of Deliberations

▮ The district court also mistakenly relied on irrelevant factors to support the Rule 29 motion. As the district court opinion begins, "After deliberating all of ten minutes, the jury in this case returned a verdict," *Cunningham,* 916 F.Supp. at 820; it is apparent that the short deliberation troubled the district court.[3] But the time it takes the

---

3.  The court later concluded:

In addition, the court is disturbed by the extraordinarily short time taken by the jury to reach its decision. In the ten minutes or so

between the time the jury left the courtroom and the time the court security officer informed the court that a verdict had been reached, the jury would hardly have had

jury to decide is not the relevant factor. The weight of the evidence is. The trial itself only lasted a day and a half; ten minutes may have been more than enough. If we trust our jury system, we must trust our jurors. Before attaching great significance to the short time the jury took for deliberations, we must have reason to suspect that the jury in some way disregarded its instructions or otherwise failed in its duty. A brief deliberation cannot, alone, be a basis for an acquittal. See *Guaranty Service Corp. v. American Employers' Insurance Co.*, 893 F.2d 725, 729 (5th Cir.1990) (" '[The judge] cannot hold an hourglass over the jury. If the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial.' ") (quoting *Marx v. Hartford Accident & Indemnity Co.*, 321 F.2d 70, 71 (5th Cir.1963)). At best, it is a factor to be considered when deciding a motion for a new trial, and even then cannot be the only basis for granting a new trial. *Kearns v. Keystone Shipping Co.*, 863 F.2d 177, 182 (1st Cir. 1988); *United States v. Smith*, 26 F.3d 739, 760 (7th Cir.), cert. denied —— U.S. ——, 115 S.Ct. 680, 130 L.Ed.2d 612 (1994); *United States v. Peskin*, 527 F.2d 71 (7th Cir.1975) (length of deliberations relevant when considering whether the judge encouraged the jury to override its convictions in favor of returning a quick verdict). Many cases refer without comment to very short jury deliberations. See, e.g., *United States v. Jeffers*, 532 F.2d 1101, 1105 (7th Cir.1976) (thirty minute deliberation after seven day trial).

Here, we can conclude nothing beyond the fact that the trial lasted less than two days, the jury was properly instructed and the government argued a plausible theory of constructive possession requiring only one inference (not an impermissible piling of inference upon inference) that the jury was entitled to accept.

The judgment of acquittal is therefore RE-VERSED and the guilty verdict REINSTATED.

enough time to choose a foreperson and review the instructions.

*Cunningham*, 916 F.Supp. at 820.