**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**MARCE GONZALEZ, JR.**
Dyer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**BRIAN REITZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JORY D. PETERS, | ) |
| | ) |
| Appellant-Defendant, | ) |
| | ) |
| vs. | ) No. 45A03-1305-CR-177 |
| | ) |
| STATE OF INDIANA, | ) |
| | ) |
| Appellee-Plaintiff. | ) |

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Thomas P. Stefaniak, Jr., Judge
Cause No. 45G04-1202-MR-2

**May 28, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Jory Peters appeals his conviction for murder. We affirm.

**Issues**

Peters raises three issues, which we restate as:

> I.      whether the trial court properly admitted evidence of a prior incident between Peters and the victim;
>
> II.     whether the trial court properly precluded Peters from questioning a witness regarding disputes between Peters and the victim; and
>
> III.    whether Peters was denied his Sixth Amendment rights by the jury's short deliberation.

**Facts**

In July 2011, Crystal Mendez was driving in Gary with her mother and her brother, Juan Nieves. They noticed that a white Grand Prix was following them. The vehicle pulled beside Mendez's vehicle, and they saw Peters, who was driving the vehicle, look directly at them.

On August 7, 2011, Mendez saw Peters again. She was driving with Nieves when they saw Peters driving a Chrysler 300 with a distinctive green paint pattern. Peters was driving slowly in front of them, so Mendez passed Peters and drove toward their home. When Mendez pulled into a gas station, Peters stopped in the middle of the street. Peters's passenger got out of the vehicle, and Mendez heard gunshots. Nieves told Mendez to go home, and he ran into the gas station.

On August 14, 2011, Mendez was with her boyfriend's sister, Tiyona Dennie. Mendez again saw Peters driving the green Chrysler 300. Mendez and Dennie started

looking for Nieves to warn him that Peters was in the area. They located Nieves, warned him, and told him to go home. Mendez and Dennie then went to Mendez's house. As they reached the porch, they heard gunshots. Soon a girl rode up on her moped and said that Nieves's truck had crashed nearby. Mendez went to the scene, where she found Nieves's truck crashed into a tree and Nieves with several gunshot wounds, which were fatal.

On the same day, Annette Harmon was driving down 25th Avenue in Gary headed toward Broadway. In her rearview mirror, Harmon noticed a Chrysler 300 with a "funny green paint job" approaching at a high rate of speed. Tr. p. 257. The vehicle passed Harmon, and she heard gunshots. Harmon "ducked" and, when she looked back up, she saw the Chrysler 300 driving the wrong way into oncoming traffic. Id. at 259. The vehicle ran a red light and made a right turn on Broadway. Harmon saw a truck that was two cars in front of her turn a corner and drive into some bushes. Harmon and her passenger stopped to see if they needed help and called 911. The incident was recorded on video surveillance cameras of nearby businesses.

The State charged Peters with the murder of Nieves. The State also charged Peters and Roosevelt Franklin with two counts of Class A felony attempted murder, two counts of Class C felony attempted battery, and Class D felony criminal recklessness, all related to the August 7th incident. At Peters's first trial, a jury found him not guilty of the charges related to the August 7th incident, and the jury deadlocked on the murder charge. A second trial was held in November 2012 on the murder charge. At the second jury trial, Peters objected to the direct examination of Mendez regarding the August 7, 2011

3

incident based on Indiana Evidence Rule 404(b), and the trial court overruled the objection. During cross-examination of Mendez, Peters's attorney attempted to question Mendez regarding alleged accusations by Peters that Nieves and Mendez's boyfriend had been robbing people. The State objected to the cross-examination, the trial court sustained the objection, and Peters made an offer of proof. Peters's statement to the police, in which he conceded that he was driving the green Chrysler 300 on August 14th, was admitted. The jury found Peters guilty of murder, and the trial court sentenced him to fifty-five years in the Department of Correction.

Peters filed a motion to correct error, alleging in part that the jury had deliberated for "approximately five (5) minutes" and that the jury's "haste" indicated "a lack of careful consideration." App. p. 243. Peters alleged that the short deliberation violated his due process rights and "trial by jury as guaranteed by the Fifth, Sixth and Fourteenth Amendments" and Article 1, Sections 12 and 13 of the Indiana Constitution. Id. at 243-44. Peters's attorney filed an affidavit that the jury "deliberated approximately five (5) minutes." Id. at 252a. At a hearing on the matter, the State disputed that the jury deliberated five minutes and stated, "it was somewhere about fifteen minutes before I was notified that there was a verdict." Tr. p. 619. The trial court denied Peters's motion to correct error. The trial court found:

> 1. The fact that the jury deliberated for a short period of time, in and of itself, does not on its face, indicate that the jury failed to follow the Court's final instructions;
>
> 2. The length of deliberations of less than twenty minutes taken by itself is insufficient to overturn a jury verdict .
> . . .

4

App. p. 256. The trial court noted that "just because the jury arrives at a quick verdict does not necessarily point to the fact that the jury failed to follow the Court's final instructions." Id. Peters now appeals.

**Analysis**

*I. Evidence Regarding August 7th Incident*

Peters asserts that the trial court erred by allowing the admission of evidence regarding the August 7th incident. Peters contends that the evidence was inadmissible under Indiana Evidence Rule 404(b). We afford the trial court wide discretion in ruling on the admissibility of evidence. Nicholson v. State, 963 N.E.2d 1096, 1099 (Ind. 2012). We review evidentiary decisions for an abuse of discretion and reverse only when the decision is clearly against the logic and effect of the facts and circumstances. Id.

At the time of Peters's trial, Evidence Rule 404(b) provided:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Rule 404(b) "is designed to prevent the jury from making the 'forbidden inference' that prior wrongful conduct suggests present guilt." Halliburton v. State, 1 N.E.3d 670, 681 (Ind. 2013). "In assessing the admissibility of 404(b) evidence [the] trial court must: (1) determine that the evidence of other crimes, wrongs, or acts is relevant to a matter at

5

issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect pursuant to Rule 403." Id. at 681-82.

The trial court concluded that evidence concerning the August 7th incident was admissible to show Peters's motive. "Numerous cases have held that where a relationship between parties is characterized by frequent conflict, evidence of the defendant's prior assaults and confrontations with the victim may be admitted to show the relationship between the parties and motive for committing the crime." Iqbal v. State, 805 N.E.2d 401, 408 (Ind. Ct. App. 2004). We agree with the trial court that the August 7th incident was relevant to show the relationship between Peters and Nieves and motive for Nieves's murder.

Even if evidence is relevant to show motive and the relationship between the parties, it may still be inadmissible under the second prong of the Evidence Rule 404(b) test if its probative value is substantially outweighed by the danger of unfair prejudice pursuant to Evidence Rule 403. See Iqbal, 805 N.E.2d at 408-09. When inquiring into relevance, the trial court "may consider any factor it would ordinarily consider under Rule 402." Id. at 409. "Such factors include the similarity and proximity in time of the prior act, as well as tying the prior act to the defendant." Id.

According to Peters, the evidence of the August 7th incident was unfairly prejudicial because he had been acquitted of charges brought related to the incident. The State points out, and Peters acknowledges, that the United States Supreme Court held in Dowling v. United States, 493 U.S. 342, 348 (1990), that relevant and probative evidence

6

that is otherwise admissible under the Rules of Evidence is not excluded by the Double Jeopardy Clause or the Due Process Clause simply because it relates to alleged criminal conduct for which a defendant has been acquitted. Further, we note that our supreme court addressed a similar issue in Underwood v. State, 722 N.E.2d 828, 833 (Ind. 2000), and held:

> To determine whether evidence relating to an acquitted offense should be admitted, the trial court must (1) determine what facts were necessarily decided in the first trial by examining prior proceedings and considering the pleadings, evidence, the charge and other relevant matters; and (2) decide whether the government in a subsequent trial attempted to relitigate facts necessarily established against it in the first trial. If so, evidence of the former offense must be suppressed.

There is no argument or indication that the State was attempting to relitigate the facts surrounding the August 7th incident. The State made clear while presenting its case that Peters was not accused of shooting at Nieves during that incident, and the State did not mention the previous charges against Peters related to the incident. We conclude that the probative value of the evidence concerning the August 7th incident outweighed the danger of unfair prejudice. The trial court did not abuse its discretion by admitting the evidence.

## II. Cross-Examination of Mendez

During his cross-examination of Mendez, Peters sought to question her regarding allegations that Peters accused Nieves and Mendez's boyfriend of robbing people. The scope and extent of cross-examination is within the discretion of the trial court. Palmer v. State, 654 N.E.2d 844, 848 (Ind. Ct. App. 1995). We will reverse only upon finding an abuse of that discretion. Id.

7

During cross-examination, Peters asked Mendez: "You became aware that Jory Peters believed that both of them [Nieves and Mendez's boyfriend] were responsible for thefts and burglaries and robberies in the Midtown area, is that correct?" Tr. p. 99. The State objected based on hearsay and speculation. The trial court sustained the objection, finding that the evidence sought to be admitted was double hearsay and violated Evidence Rules 404, 609, and 403. Peters made the following offer of proof:

> If allowed to have the question answered, I believed based upon her statement to Sergeant Robertson of the Gary Police Department, that on August 14, 2011, Crystal Mendez said, when asked the question, "Do you know what this is about?" "Jory said my brother, Juan, robbed him a while back." If she answered in the negative, that she didn't say that, or didn't recall it, we would then present the testimony of Sergeant Robertson to establish that on that date, August 14, 2011, in fact that is what she said.

Id. at 150.

On appeal, Peters argues that the evidence was admissible to show why Mendez was afraid of Peters and to show Mendez's bias toward Peters. We first note that Peters cites no authority to support his argument. Consequently, Peters has waived the argument. Cooper v. State, 854 N.E.2d 831, 834 n.1 (Ind. 2006); Ind. Appellate Rule 46(A)(8)(a) (requiring argument to be supported by coherent reasoning with citations to authority). Waiver notwithstanding, we conclude that the trial court did not abuse its discretion by excluding the evidence.

Peters argues that he should have been allowed to present evidence regarding Mendez's knowledge of the "bad blood" between Peters and Nieves, Mendez's bias against Peters to protect her brother, and how Nieves and Peters knew each other.

8

Appellant's Br. p. 13. According to Peters, this evidence "would have explained Mendez's state of mind and her bias." Id. The State argues, in part, that any error in the exclusion of the evidence was harmless. An error is harmless if its probable impact on the jury, in light of all of the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. Gault v. State, 878 N.E.2d 1260, 1267-68 (Ind. 2008). The jury was well aware that Mendez was the victim's sister, and as the State points out, "it surely would not have been surprising to the jury that Mendez would take her brother's side against her brother's murderer." Appellee's Br. p. 21. Further, Peters extensively cross-examined Mendez and pointed out inconsistencies in her testimony. Other testimony and video surveillance established that Peters pulled alongside Nieves's vehicle, Nieves's vehicle swerved off of the road, and Peters sped away. Nieves was then found with several bullet wounds. Peters admitted to driving his vehicle at the scene of the incident. In light of the evidence presented, even if the trial court erred by excluding the cross-examination, any error was harmless.

### III. Length of Jury Deliberations

Next, Peters argues that the short length of the jury's deliberations was "insufficient in this case to satisfy his Sixth Amendment right to a fair and impartial jury." Appellant's Br. p. 14. According to Peters, the jury deliberated for approximately five minutes. However, the trial court found that the jury deliberated for "less than twenty minutes." App. p. 256.

The Sixth Amendment to the United States Constitution guarantees that a defendant is entitled to an impartial jury. Few Indiana cases have discussed the adequacy

9

of a short jury deliberation. In <u>Shields v. State</u>, 523 N.E.2d 411, 413 (Ind. 1988), our supreme court rejected a defendant's argument that a fifty-minute deliberation violated his right to a jury trial and due process. The court held: "Considering the length of the trial and the facts in this case, we do not find the deliberation period to be so short that the jury could not have conscientiously and thoroughly complied with their instructions to reach a verdict." <u>Shields</u>, 523 N.E.2d at 413. Also, in <u>Wilson v. State</u>, 253 Ind. 585, 590-91, 255 N.E.2d 817, 821 (1970), our supreme court rejected an assertion that a twelve-minute deliberation amounted to jury misconduct. The State notes that the Seventh Circuit addressed a similar argument in <u>U.S. v. Cunningham</u>, 108 F.3d 120, 123-24 (7th Cir. 1997), <u>cert. denied</u>. There, the Seventh Circuit held that the "time it takes the jury to decide is not the relevant factor. The weight of the evidence is." <u>Cunningham</u>, 108 F.3d at 123-24. "Before attaching great significance to the short time the jury took for deliberations, we must have reason to suspect that the jury in some way disregarded its instructions or otherwise failed in its duty." <u>Id.</u> at 124. "A brief deliberation cannot, alone, be a basis for an acquittal." <u>Id.</u> The Seventh Circuit rejected an argument that a ten-minute deliberation after a day and a half trial was sufficient to overturn a jury's guilty verdict.

According to Peters, we should consider whether the factual issues at trial were complex and the "closeness" of the case. Appellant's Br. p. 15. Even if we consider those issues, given the eyewitness testimony, the video surveillance evidence, and Peters's own statement to the police, we cannot say that the issues were particularly complex or that the case was "close." In the light of the evidence, we cannot say that

10

Peters's Sixth Amendment rights were violated by the short duration of the jury's deliberations. See State v. Lumbra, 177 A.2d 356, 358 (Vt. 1962) ("We think that the trial court might well have considered, in the light of the evidence, that it was the strength of the State's case which affected the duration of the jury's deliberation rather than any failure on their part to give the case adequate consideration.").

## Conclusion

The trial court did not abuse its discretion by admitting evidence about the August 7th incident between Peters and the victim, and the trial court did not abuse its discretion by excluding Peters's proposed cross-examination of the victim's sister. Further, the jury's short deliberation did not violate Peters's Sixth Amendment rights. We affirm.

Affirmed.

BAKER, J., and CRONE, J., concur.